**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SHORT BARK INDUSTRIES, INC., et al.[1] | Case No. 17-11502 (KG) |
| Debtor. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) SCHEDULING
A FINAL HEARING, AND (III) GRANTING RELATED RELIEF**

Short Bark Industries, Inc., on behalf of itself and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (this "Cash Collateral Motion") for entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Cash Collateral Orders"), (i) authorizing the Debtors to use "cash collateral," (the "Cash Collateral") as such term is defined in section 363 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"); (ii) granting liens and superpriority administrative claims pursuant to section 364 of the Bankruptcy Code; (iii) scheduling a final hearing with respect to the relief requested herein pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (iv) granting related relief. In support of this Cash Collateral Motion, the Debtors respectfully represent as follows.

**Jurisdiction and Venue**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the

---

[1] The Debtors in these jointly administered cases are Short Bark Industries, Inc. (Tax ID: 66-0655657) and EXO SBI, LLC (Tax ID: 46-5210695)).

District of Delaware, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2.

## Relief Requested

2. By this Cash Collateral Motion, the Debtors request entry of the Interim Order, substantially in the form accompanying this motion, and the Final Order (together with the Interim Order, the "Cash Collateral Orders") that, among other things:

   a. authorizes the Debtors to use Cash Collateral, including Cash Collateral in which one or more of the Debtors' creditors may have a lien or other interest, in each case whether existing on the Petition Date, arising pursuant to the Interim Order, or otherwise;

   b. vacates the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the Interim Order;

   c. schedules a final hearing on the Cash Collateral Motion (the "Final Hearing") to be held no later than 21 calendar days after the entry of the Interim Order to consider entry of the Final Order that grants all of the relief requested in this Cash Collateral Motion on a final basis and which Final Order shall be in form and substance (including with respect to any subsequent modifications to the form or substance made in response to objections of other creditors or this Court);

d.   provides for the immediate effectiveness of the Interim Order and waives any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

## Background

3. On July 10, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. As of the date hereof, no creditors' committee has been appointed.

4. Factual background relating to the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in detail in the *Declaration of Phil Williams in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day Declaration") and is incorporated herein by reference.

5. The Debtors have one creditor, LSQ Funding Group, L.C. ("LSQ"), that either has or claims to have a security interest in the Cash Collateral. It is relevant to note that LSQ's claims relate to some, but not all, of the Debtors' outstanding accounts receivable.

6. As of the Petition Date, the Debtors anticipate that they will continue their operations and reorganize their debt.

## Basis for Relief Requested

### I. THE DEBTORS SHOULD BE PERMITTED TO USE CASH COLLATERAL

7. Section 363 of the Bankruptcy Code governs the Debtors' use of property of the estates. Section 363(c)(1) of the Bankruptcy Code provides that:

> If the business of the debtor is authorized to be operated under Section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the

        estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

8. Section 363(c)(2) of the Bankruptcy Code, however, provides an exception with respect to "cash collateral" to the general grant of authority to use property of the estate in the ordinary course set forth in section 363 of the Bankruptcy Code. Specifically, a trustee or debtor in possession may not use, sell, or lease "cash collateral" under subsection (c)(1) unless:

    a. Each entity that has an interest in such collateral consents; or

    b. The court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

9. The Debtors need the use of Cash Collateral in order to fund their ordinary course of business operations and administration. As stated more fully in the First Day Declaration, Cash Collateral is necessary to continue the production and marketing of the Debtors' products, thus permitting the Debtors to successfully reorganize. To avoid immediate and irreparable harm to the Debtors' business operations and their estates, the Debtors have an immediate need for authority to use Cash Collateral.

10. The Debtors' primary concern at this early stage of their bankruptcy proceedings is to ensure that their business operations continue to move ahead as smoothly as possible. The continued use of cash collateral will allow the Debtors to continue operating so that they can continue with their reorganization by proposing a plan to satisfy the claims of their creditors.

11. The Debtors propose to provide adequate protection to their secured creditors in the form of a replacement lien of the same extent, priority, and validity as existed pre-petition (to the extent that any lien existed).

12. Accordingly, LSQ will be granted a replacement lien in unencumbered account(s), for services rendered by the Debtors, as adequate protection. These liens will correspond with the Debtors' utilization of Cash Collateral encumbered by LSQ, allowing the Debtors to access the necessary funds to continue operating while preventing, to the extent possible, damage to LSQ's position as a secured creditor.

13. The Debtors are also aware of certain accounts which LSQ has collected, but which were not subject to LSQ's factoring agreement. Any amount collected from accounts not subject to LSQ's factoring agreement constitute property of the Debtors and should be remitted to the Debtors to be used by the Debtors in conjunction with this Cash Collateral Motion.[2]

14. The Debtors represent that the replacement account or accounts to be encumbered as described above will represent orders of product and/or services completed and will be invoiced to the relevant purchaser in a timely manner.

15. Additionally, the Debtors are willing to make adequate protection payments to LSQ in order to preserve LSQ's position.

16. The structure of this proposed adequate protection, in the form of monthly cash payments and replacement liens, will prevent diminution to the Debtors' estates. It will protect the value of the Debtors' assets, not only for the benefit of LSQ, but also for the benefit of the Debtors' trade creditors, employees, and other interested parties.

17. The use of cash collateral, and an adequate replacement of security, is critical to the Debtors' success.

---

[2] As Debtor has not been provided with any reporting from LSQ regarding its collections from the Debtors' accounts. the Debtors are unable to determine the specific non-factored accounts from which LSQ collected. As such, the Debtors intend to make a demand to LSQ for turnover of these funds. The Debtors may have no choice but to seek the Court's intervention on this issue.

18. The Debtors submit that, under the circumstances here, their request to use Cash Collateral should be approved. Further, the proposed adequate protection is fair, reasonable, and sufficient to satisfy the requirements of sections 363(c)(2) and (3) of the Bankruptcy Code.

19. Attached hereto as Exhibit A is a Budget of the disbursements that will be necessary for the time period in the Interim Order.

## II. INTERIM APPROVAL SHOULD BE GRANTED AND A FINAL HEARING SHOULD BE SCHEDULED

20. The Debtors request that the Court hold and conduct an interim hearing immediately to consider entry of the proposed Interim Order authorizing the Debtors to use Cash Collateral as provided therein. This relief will enable the Debtors to operate their businesses in a manner that will permit them to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to their estates and all parties in interest pending the Final Hearing.

21. Additionally, the Interim Order provides for the protection of the position of LSQ, the Debtors' secured creditor.

### Final Hearing & Notice

22. The Debtors further respectfully request that the Court schedule the Final Hearing and authorize Debtors to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, by first-class mail upon: (a) the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) all known holders of liens upon the Debtors' assets; (d) the Internal Revenue Service; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 2002-1.

**No Prior Request**

23. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter (i) the Interim Order granting the relief requested herein, (ii) schedule a Final Hearing, (iii) enter the Final Order following a Final Hearing, and (iv) grant such other relief as is just and proper.

**BIELLI & KLAUDER, LLC**

Dated: July 11, 2017
Wilmington, Delaware

*/s/ David M. Klauder*
David M. Klauder (No. 5769)
Nella M. Bloom (No. 5430)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
dklauder@bk-legal.com
nbloom@bk-legal.com

*Proposed Counsel for the Debtors*