IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SHORT BARK INDUSTRIES, INC.,[1] | ) Case No. 17-11502 (KG) |
| | ) |
| Debtors. | ) (Joint Administration Pending) |
| | ) |
| | ) **Related to Docket Nos. 9 and 14** |

**EMERGENCY INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POSTPETITION FACTORING AND FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364, (II) GRANTING LIENS, SECURITY INTERESTS AND UPERPRIORITY CLAIM, (IV) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTOR AND PROVIDING FOR ADEQUATE PROTECTION (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FURTHER INTERIM HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion dated July 11, 2017and supplement to motion dated July 12, 2017 (collectively, the "Motion") of EXO SBI, LLC ("EXO") and Short Bark Industries, Inc. ("Short Bark" and collectively with EXO, the "Debtors") in the above-captioned chapter 11 cases (the "Bankruptcy Cases"), under sections 105, 361, 362, 363and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the corresponding Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") seeking, among other things:

    (1)    authorization for Short Bark to enter into and obtain secured post-petition factoring, consisting of (a) the purchase by LSQ Funding Group, LLC, as purchaser, (the "Purchaser" or "LSQ") of certain of Short Bark's Accounts[2] and (b) an over-advance above the purchase in subsection (a) above, up to a combined aggregate maximum

---

[1] The Debtors in these jointly administered cases are Short Bark Industries, Inc. (Tax ID: 66-0655657) and EXO SBI, LLC (Tax ID: 46-5210695).

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms as used in the Factoring and Security Agreement date January 10, 2013 as amended from time to time and the related documents thereto (collectively, the "Pre-Petition Documents").

PHIL1 6330993v.3

amount not to exceed $237,844.00 to be used solely for payroll and payroll taxes and for the payment to certain vendors set forth on the Budget attached hereto as Exhibit A (the "DIP Financing") for the Emergency Period (defined below);

(2) grant LSQ the DIP Liens (defined below) and DIP Superpriority Claims (defined below) to secure the DIP Financing;

(3) authorization for Short Bark to use "cash collateral" as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral") in which LSQ has an interest solely for payroll and payroll taxes and for the payment to certain vendors set forth on the Budget attached hereto as Exhibit A;

(4) grant LSQ the Replacement Liens and Pre-Petition Superpriority Claims (each as defined below) to the extent of any Pre-Petition Diminution in Value (as defined below) of LSQ's interest in the Pre-Petition Collateral (as defined below) as adequate protection for the granting of the DIP Liens (as defined below) to LSQ, the use of Cash Collateral, and for the imposition of the automatic stay;

(5) authorization for Short Bark to perform such other and further acts as may be required to effectuate this emergency interim order (the "Emergency Interim Order");

(6) modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Emergency Interim Order;

(7) schedule a further interim hearing (the "Interim Hearing") to consider entry of an interim order (the "Interim Order") granting the relief requested in the DIP Motion on a interim basis; and

(8) waive the fourteen (14) day stay provisions of Bankruptcy Rule 6004(h) and provide for immediate effectiveness of this Emergency Interim Order.

And the Court having held the emergency interim hearing on the Motion (the "Emergency Interim Hearing") on July 13, 2017; and the Court having considered all the pleadings filed with this Court, including any objections to the Motion; and as further stated on the record at the Emergency Interim Hearing; and upon the record made by the Debtors at the Emergency Interim Hearing; and upon the entire record of the Bankruptcy Cases; and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.  *Disposition.* The Motion is granted on an emergency interim basis for the period beginning upon entry of this Emergency Interim Order through the Interim Hearing (the "Emergency Period") in accordance with the terms set forth herein. Any objections to the relief sought in the Motion, and any reservations of rights with respect to such relief, that have not been previously resolved or withdrawn, are overruled on the merits.

2.  *Commencement of the Bankruptcy Case, Jurisdiction and Venue.* On July 10, 2017 (the "Petition Date"), the Debtors each filed a petition with this Court commencing a case under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their businesses and managing their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. This Court has jurisdiction over the Bankruptcy Case and the Motion as a core proceeding, and over the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

3.  *Notice.* Notice of the Emergency Interim Hearing and the proposed entry of this Emergency Interim Order has been provided to: (i) the twenty (20) largest unsecured creditors of the Debtor; (ii) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (iii) counsel to LSQ; (iv) all known parties asserting a lien against the Collateral; (v) any taxing authority having a claim against the Debtors; and (vi) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules and the Local Rules. The notice given by the Debtors of the Emergency Interim Hearing and the proposed entry of this Emergency Interim Order constitutes appropriate, due and sufficient notice thereof under the circumstances and complies with sections 102(1), 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 4001(b) and (c) and the Local Rules, and no other notice need be provided prior to entry of this Emergency Interim Order.

4. *Findings Regarding the DIP Financing.*

(a) Good cause has been shown for the entry of this Emergency Interim Order.

(b) Short Bark has a critical need to obtain the DIP Financing and use of the Collateral and Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its businesses and to make payroll.

(c) Short Bark is unable to obtain financing on more favorable terms from sources other than LSQ and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Short Bark is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code without Short Bark granting to LSQ, the DIP Liens and the Superpriority Claims (each as defined herein) under the terms and conditions set forth in this Emergency Interim Order.

(d) Based on the record presented to the Court at the Emergency Interim Hearing, the terms of the DIP Financing and the use of the Collateral and Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e) The DIP Financing and the use of Collateral and Cash Collateral have been negotiated in good faith and at arm's length among the Debtors, and LSQ, and all of Short Bark's obligations and indebtedness arising under, in respect of or in connection with the DIP Financing, including without limitation all loans incurred by or made to Short Bark pursuant to this Emergency Interim Order (collectively, the "DIP Obligations"), shall be deemed to have been extended by LSQ and their affiliates in good faith, as that term is used in section 364(e) of

the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Emergency Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f) The Debtors have requested entry of this Emergency Interim Order pursuant to Bankruptcy Rules 4001(c), 4001(d) and the Local Rules. Short Bark requires access to the DIP Financing provided by the DIP Financing and use of the Collateral and Cash Collateral in order to continue its operations and pay payroll. Consummation of the DIP Financing and authorization of the use of the Collateral and Cash Collateral in accordance with this Emergency Interim Order is therefore in the best interests of the Debtors' estates.

5. *Debtors Acknowledgements and Agreements.* The Debtors (on behalf of themselves and their estates) subject to the typical challenge rights for an official committee of unsecured creditors and/or chapter 11 trustee that will be contained in a further interim order, admit, stipulate, acknowledge and agree that:

(a) Pursuant to the Pre-Petition Documents, Short Bark was indebted to LSQ in the approximate amount of $9,853,433 plus accrued and accruing interest, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, (collectively the "Pre-Petition Obligations").

(b) To secure the Pre-Petition Obligations, Short Bark granted security interests and liens (the "Pre-Petition Liens") to LSQ upon all of Short Bark's personal property and fixtures, and proceeds thereof, including without limitation: accounts; chattel paper; inventory; equipment; instruments, including promissory notes; investment property; documents; deposit accounts; letter of credit rights; general intangibles; and supporting obligations

(collectively, the "Pre-Petition Collateral"), with priority over all other liens except any liens otherwise permitted by the Pre-Petition Documents and all other liens that were in fact senior in priority to the Pre-Petition Liens as of the Petition Date, if any (which were valid, properly perfected, unavoidable, and senior to the Pre-Petition Liens, they are referred to herein as the "Permitted Prior Liens").

(c)     As of the Petition Date (i) the Pre-Petition Liens were valid, binding, enforceable, perfected first-priority liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and subject only to any Permitted Prior Liens, (ii) the Pre-Petition Obligations constituted legal, valid and binding obligations of Short Bark, enforceable in accordance with the terms of the Pre-Petition Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists, and no portion of the Pre-Petition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Obligations constituted allowable secured claims, and (b) on the date that this Emergency Interim Order is entered, the Debtors have waived, discharged and released LSQ, together with their affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to any of the Pre-Petition Obligations, (y) to challenge or object to the security for the Pre-Petition Obligations, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Documents or otherwise.  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-

PHIL1 6330993v.3

Petition Documents or the Pre-Petition Liens, and/or security interests in the Pre-Petition Collateral, or any claim of LSQ pursuant to the Pre-Petition Documents.

(d) LSQ has a security interest and lien in Cash Collateral, including on all amounts on deposit in Debtors' banking, checking, or other deposit accounts and all proceeds of Pre-Petition Collateral to secure the other deposit accounts and all proceeds of Pre-Petition Collateral to secure the Pre-Petition Obligations, to the same extent and order of priority as that which was held by each such party pre-petition.

6. *Authorization of the DIP Financing and Use of Cash Collateral.*

(a) Short Bark is hereby authorized to sell to LSQ certain Accounts of Short Bark and incur indebtedness and use Cash Collateral in the aggregate maximum amount not to exceed $237,844.00 on an emergency interim basis pending the Interim Hearing on the Motion, which shall be used solely for payroll and payroll taxes and for payment of certain vendors in accordance with the Budget attached hereto as Exhibit A.

(b) Short Bark shall supply LSQ with a listing of all Accounts and invoices generated for the period from and including July 3, 2017 through and including July 14, 2017 and all other information required for the purchase of such Accounts under the Pre-Petition Documents.

(c) In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Debtors' performance of its obligations under this Emergency Interim Order.

(d) No obligation, payment, transfer or grant of security under this Emergency Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7. *Adequate Protection for LSQ.* As adequate protection for the interest of LSQ in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, Short Bark's use of the Collateral and Cash Collateral and other decline in value arising out of the automatic stay or Short Bark's use, sale, depreciation, or disposition of the Pre-Petition Collateral ("Pre-Petition Diminution in Value"), LSQ shall receive adequate protection as follows:

(a) Pre-Petition Replacement Liens. Solely to the extent of the Pre-Petition Diminution in Value of the interests of LSQ in the Pre-Petition Collateral, LSQ shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the DIP Collateral (the "Pre-Petition Replacement Liens"), which shall be junior only to the DIP Liens, Permitted Prior Liens, if any.

(b) Pre-Petition Superpriority Claim. To the extent of the Pre-Petition Diminution in Value of LSQ's interest in the Pre-Petition Collateral, LSQ shall have an allowed superpriority administrative expense claim pursuant to Bankruptcy Code section 507(b) (the "Pre-Petition Superpriority Claim") which shall have priority (except with respect to the DIP Liens and the DIP Superpriority Claim) over any other claims under sections 364(c)(1), 503(b)

and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114 of the Bankruptcy Code and, if approved in a final order, section 506(c) of the Bankruptcy Code, whether or not such expenses of claims may become secured by a judgment or other non-consensual lien, levy or attachment.

8. *DIP Superpriority Claims.* Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (the "DIP Superpriority Claims"), which allowed DIP Superpriority Claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof. (The Pre-Petition Superpriority Claim and DIP Superpriority Claim are collectively referred to as, the "Superpriority Claims")

9. *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by LSQ of, or over, any

PHIL1 6330993v.3

Collateral, LSQ shall receive, and is granted by Short Bark, for its own benefit, a fully perfected pledge of all equity, and a fully perfected security interest in all prepetition and post-petition assets of Short Bark (including the Accounts), all property identified in clauses (a), (b) and (c) below, and in each case, all proceeds resulting therefrom (such property being collectively referred to as the "DIP Collateral") (all such liens and security interests granted to LSQ, for its benefit, pursuant to this Emergency Interim Order, the "DIP Liens"):

(a) First Lien on Cash Balances and Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "Unencumbered Property"), including without limitation, all inter-company notes or inter-company receivables due to the Debtors, any and all cash and cash collateral of the Debtors and any investment of such cash and cash collateral, inventory, any accounts receivable, any other right to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of all subsidiaries and the proceeds of all the foregoing. Subject to entry of a final order on the Motion, Unencumbered Property shall also include the Debtors' claims and causes of action under sections 502(d), 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code and the proceeds thereof and property received thereby whether by judgment, settlement or otherwise (collectively, "Avoidance Actions"); provided, however, that (1) upon satisfaction in full in cash of the DIP Obligations,

the DIP Liens on the Avoidance Actions and the proceeds and property recovered thereunder shall automatically be released, and (2) the proceeds and property recovered or the subject of Avoidance Actions shall only be used to pay or otherwise satisfy any DIP Liens to the extent necessary after commercially reasonable efforts have been undertaken by LSQ to pay or otherwise satisfy any DIP Liens from the other Collateral.

(b) <u>Liens Priming the Prepetition Liens and Other Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, any and all cash and Cash Collateral of the Debtors(whether maintained with LSQ or otherwise) and any investment of such cash and cash collateral, inventory, any accounts receivable, any other right to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired.

(c) <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 10, as to which the liens and security interests in favor of LSQ, for its benefit, will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of

the Bankruptcy Code, which liens in favor of LSQ are immediately junior to such valid, perfected and unavoidable liens ("Third Party Liens").

(d) <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (a) subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (b) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

10. *Protection of LSQ's Rights.*

(a) All Collateral shall be free and clear of all liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under this Emergency Interim Order (including Third Party Liens).

(b) So long as there are any DIP Obligations outstanding, LSQ may file any financing statement or other document to perfect the liens granted pursuant to this Emergency Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date.

11. *Perfection of DIP Liens.*

(a) Subject to the provisions of paragraph 10 above, LSQ is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action (including taking or releasing any liens or pledges granted by this Emergency Interim Order) in order to validate and perfect the DIP Liens granted

to it hereunder and the stay imposed under section 362 of the Bankruptcy Code is hereby lifted to permit the filing and recording of a certified copy of this Emergency Interim Order or any such documents or instruments. The failure of the Debtors to execute any documentation relating to the enforceability, priority or perfection of the DIP Liens shall in no way affect their validity, perfection or priority.

12. *Preservation of Rights Granted Under the Emergency Interim Order.*

(a) Unless all DIP Obligations shall have been indefeasibly paid in full, it shall constitute an Event of Default and terminate the right of Short Bark to use the DIP Financing and/or any cash provided by the DIP Loans if there is entered (i) any modifications or extensions of this Emergency Interim Order without the prior written consent of LSQ, and no such consent shall be implied by any other action, inaction or acquiescence by LSQ, or (ii) an order converting or dismissing the Bankruptcy Case. If an order dismissing the Bankruptcy Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (A) the DIP Liens granted to LSQ pursuant to this Emergency Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Emergency Interim Order until all DIP Obligations shall have been paid and satisfied in full (and that such DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), (B) the other rights under this Emergency Interim Order shall not be affected and (C) this Court shall retain jurisdiction, notwithstanding such dismissal to the fullest extent permitted by law, for the purposes of enforcing the liens and security interests referred to in this paragraph.

(b) If any or all of the provisions of this Emergency Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall

not affect (i) the validity of any DIP Obligations incurred prior to the actual receipt of written notice by LSQ, of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien, or the priority thereof authorized or created pursuant to this Emergency Interim Order with respect to any DIP Obligations. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral, or DIP Obligations incurred by the Debtors to LSQ before the actual receipt of written notice by LSQ of the effective date of such reversal, modification, stay or vacatur shall be governed in all respects by the original provisions of this Emergency Interim Order, and LSQ shall be entitled to all the rights, remedies, privileges and benefits granted in sections 363(m) and 364(e) of the Bankruptcy Code and this Emergency Interim Order with respect to all uses of Cash Collateral and DIP Obligations.

(c) Except as expressly provided in this Emergency Interim Order, the DIP Liens and all other rights and remedies of LSQ granted by the provisions of this Emergency Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Bankruptcy Case to a case under chapter 7 or dismissing the Bankruptcy Case, or (ii) the entry of an order confirming a chapter 11 plan in the Bankruptcy Case. The DIP Liens and all other rights and remedies of LSQ granted by the provisions of this Emergency Interim Order shall continue in full force and effect in this Bankruptcy Case or in any succeeding chapter 7 case under the Bankruptcy Code until the DIP Obligations are indefeasibly paid in full in cash.

13. *Limitation on Use of DIP Financing Proceeds and Collateral.* The Debtors shall use the DIP Financing, Cash Collateral and the Collateral solely as provided in this Emergency Interim Order and the Budget.

14.  *Binding Effect; Successors and Assigns.*  The provisions of this Emergency Interim Order, including all findings herein, shall be binding upon all parties in interest in this Bankruptcy Cases, including, without limitation, LSQ, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtors) and shall inure to the benefit of LSQ and the Debtors and their respective successors and assigns; provided, however, that LSQ shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtors.  In determining to make any loan or in exercising any rights or remedies as and when permitted pursuant to this Emergency Interim Order, LSQ shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

15.  *Effectiveness.*  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule or Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Emergency Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Emergency Interim Order as provided in such Rules.

16.  The Interim Hearing to consider entry of the Interim Order and interim approval of the Motion is scheduled for Aug. 19, 2017 at 9:30 a.m. prevailing Eastern time in the United States Bankruptcy Court for the District of Delaware.  If no objections to the relief sought in the Interim Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Interim Order may be presented by the Debtor and entered by this Court.  On or before July 14, 2017, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Emergency Interim Order and

of the Interim Hearing (the "<u>Interim Hearing Notice</u>"), together with copies of this Emergency Interim Order, the proposed Interim Order and the Motion, on: (i) the parties having been given notice of the Emergency Interim Hearing; and (ii) any party that has filed prior to such date a request for notices with this Court. The Interim Hearing Notice shall state that any party in interest objecting to the entry of the proposed ~~Final~~ *Interim* Order shall file written objections with the Clerk of this Court no later than *July 18*, 2017, at 4:00 p.m. prevailing Eastern time, which objections shall be served so that the same are received on or before such date and time by: (i) counsel for the Debtors; (ii) the Office of the United States Trustee; and (iii) counsel for LSQ.

17. This Court has and will retain jurisdiction to enforce this Emergency Interim Order according to its terms.

Dated: July *13*, 2017

_____
HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE