# Exhibit B

## RATIFICATION AND AMENDMENT AGREEMENT

**THIS RATIFICATION AND AMENDMENT AGREEMENT** dated as of July [●], 2017 (this "Ratification and Amendment Agreement"), by and between, on one hand, SHORT BARK INDUSTRIES, INC., (the "Seller" or "Debtor") and, on the other hand, LSQ FUNDING GROUP, LC, in its capacity as purchaser under the Agreement (as defined below) (the "Purchaser" or "LSQ").

## RECITALS

**A.**     Seller and Purchaser are parties to that certain Factoring and Security Agreement, dated as of January 10, 2013, as amended by that certain Amendment to Factoring and Security Agreement, dated as of May 14, 2015, that certain Amendment to Factoring and Security Agreement, dated as of January 7, 2016, that certain Forbearance Agreement, dated as of October 25, 2016, and that certain First Amendment to Forbearance Agreement dated January 25, 2017; second, to May 1, 2017, pursuant to that certain Second Amendment to Forbearance Agreement dated April 3, 2017; and third, to August 31, 2017, pursuant to that certain Third Amendment to Forbearance Agreement dated June 8, 2017, in each case by and among the Seller and Purchaser (collectively, and as the same may be further amended, supplemented, modified and/or restated from time to time, the "Agreement"). Capitalized terms used in this Ratification and Amendment Agreement and not defined herein shall have the meanings given such terms in the Agreement, as amended by this Ratification and Amendment Agreement;

**B.**     On July 10, 2017 (the "Petition Date"), EXO SBI, LLC and the Seller, as debtors and debtors-in-possession, each filed a voluntary petition administered under Case No. 17-11501 (KG) and 17-11502 (KG) respectively (the "Cases") for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**C.**     Events of Default, including, without limitation, the Specified Events of Default, have occurred and are continuing under the Agreement as of the date hereof;

**D.**     In order to continue its operations as debtor and debtor-in-possession under the Bankruptcy Code, the Seller has requested that Purchaser make secured purchases of the Seller's Accounts and other financial accommodations to the Seller pursuant to the terms of the Agreement, as amended by this Ratification and Amendment Agreement  (the "DIP Financing");

**E.**     The Seller has moved for an Interim Order and Final Order to be entered by the Bankruptcy Court permitting secured post-petition, debtor-in-possession factoring of the Seller's Accounts for, among other things, the payment of general operating costs and expenses of the Case to allow the Seller to effectuate the sale of substantially all of its assets, with a first priority post-petition lien and security interest on all Accounts (as described herein) and all pre and post-petition assets of Seller as more fully described herein to secure all  Obligations (including Pre-Petition Liabilities), whether arising pre-petition or post-petition, and a superpriority administrative expense claim, with priority over all other administrative expenses of the Case all pursuant to the terms of the Agreement, as amended by this Ratification and Amendment Agreement and pursuant and subject to the Budget; and

1

F.     The Seller has offered to sell all of its post-petition Accounts to Purchaser and Purchaser has agreed to purchase Accounts from time to time pursuant to the terms of this Agreement. The proceeds from the sale of such Accounts shall be used by the Seller solely for working capital and for payment of allowed first priority administrative expenses in the Case and solely pursuant to the Budget.  Purchaser is willing to make secured purchases and other financial accommodations to Seller, only if, among other things, the Agreement and the other Documents are amended on the terms set forth in this Ratification and Amendment Agreement, and the Bankruptcy Court enters an Interim Order and Final Order, each in form and substance satisfactory to the Purchaser.

G.     The Seller has been unable to obtain long term debtor-in-possession factoring on an unsecured basis or on terms as favorable or more favorable than the terms provided herein, and an immediate need exists for the Seller to obtain funds to continue operation of its business.

**NOW, THEREFORE,** in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the undersigned hereby agrees as follows:

## 1.     ACCURACY OF RECITALS; RELATION TO AGREEMENT.

1.1     **Accuracy of Recitals**. The Seller and Purchaser acknowledge and agree that the foregoing Recitals are true and accurate and are incorporated herein by reference.

1.2     **Relation to Agreement**. This Ratification and Amendment Agreement constitutes an integral part of the Agreement and shall be deemed to be a Document for all purposes. Upon the effectiveness of this Ratification and Amendment Agreement, on and after the date hereof each reference in the Agreement to "this Agreement," "hereunder," "hereof," or words of like import referring to the Agreement, and each reference in the other Documents to "the Agreement," "thereunder," "thereof" or words of like import referring to the Agreement, shall mean and be a reference to the Agreement as amended hereby. The parties hereto agree to be bound by the terms and conditions of the Agreement and other Documents as amended by this Ratification and Amendment Agreement, as though such terms and conditions were set forth herein and therein in full.

## 2.     ACKNOWLEDGMENT OF OBLIGATIONS.

2.1     **Certain Obligations.** The Seller hereby acknowledges and agrees that, as of the Petition Date, it is unconditionally liable to the Purchaser under the Documents for the full and immediate payment of all Obligations, including, without limitation, those Obligations set forth on Schedule B attached hereto and incorporated herein by reference, plus all charges, fees, costs, and expenses that may arise under the Agreement and other Documents plus all attorneys' fees, disbursements and costs of collection incurred in connection with such Obligations by the Purchaser as well as adjustments and credits as provided in the Agreement and other Documents and that the Seller has no defenses, counterclaims or set-offs with respect to the full and immediate payment and performance of any or all Obligations under the Documents; provided, however, that for purposes of this Section 2.1, the term "Obligations" shall have the meaning

given to it in the Agreement without giving effect to this Ratification and Amendment Agreement.

2.2 **Material Defaults**. The Seller acknowledges and agrees that (a) the Specified Events of Default under the Documents constitute material defaults under the Documents, (b) any notices that might be given and any grace periods or cure periods which must expire prior to the Purchaser exercising any of its rights and remedies in connection with the Documents, have been given, complied with and expired and, in any event, are hereby waived and relinquished by the Seller, and (c) as a consequence, Purchaser is now entitled to immediately exercise all of its respective rights and remedies under the Documents, at law or in equity, including, without limitation, its rights to declare all Obligations to be immediately due, payable, and performable, without notice, except to the extent that the Purchaser agrees to forbear from exercising those rights and remedies for a certain period of time as set forth in this Ratification and Amendment Agreement and/or as provided in the Interim Order and Final Order.

2.3 **No Commitments.** The Seller further acknowledges and agrees that the Purchaser has no commitments, obligations or agreements to purchase any of the Seller's Accounts or make other financial accommodations to the Seller, all such commitments, obligations, and agreements having terminated, except to the extent that the Purchaser agrees to continue to make purchases of the Seller's Accounts or make other financial accommodations pursuant to this Ratification and Amendment Agreement and/or as provided in the Interim Order and Final Order.

2.4 **Lien Acknowledgment.** The Seller acknowledges, confirms and agrees that the Purchaser has and has had a valid, enforceable and perfected first priority security interest and lien upon all of the Pre-Petition Collateral granted by the Seller to the Purchaser pursuant to the Documents to secure all of the Obligations, subject only to liens or security interests permitted under the Documents; provided, however, that for purposes of this Section 2.4, the term "Obligations" shall have the meaning given to it in the Agreement without giving effect to this Ratification and Amendment Agreement.

3. **AMENDMENTS TO AGREEMENT.**

3.1 **New Definitions.** Section 31 of the Agreement (Definitions) is hereby amended to add the following definitions in the appropriate alphabetical order:

(a) ""**Agreement**" or "**this Agreement**" means the Factoring and Security Agreement, dated as of January 10, 2013, as amended by that certain Amendment to Factoring and Security Agreement, dated as of May 14, 2015, that certain Amendment to Factoring and Security Agreement, dated as of January 7, 2016, that certain Forbearance Agreement, dated as of October 25, 2016, and that certain First Amendment to Forbearance Agreement dated January 25, 2017; second, to May 1, 2017, pursuant to that certain Second Amendment to Forbearance Agreement dated April 3, 2017; and third, to August 31, 2017, pursuant to that certain Third Amendment to Forbearance Agreement dated June 8, 2017, in each case by and among the Seller and Purchaser, and that certain Ratification and Amendment Agreement, dated as of July [●], 2017, each by and among

3

the Seller and the Purchaser, as the same now exists or as the same may be further amended, supplemented, modified and/or restated from time to time."

(b)       ""**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the District of Delaware or any other court having jurisdiction over the Cases from time to time."

(c)       ""**Budget**" shall mean the budget prepared by the Seller and attached hereto as <u>Schedule C</u> in form and substance satisfactory to the Purchaser."

(d)        ""**Carve-Out**" shall have the meaning given such term in the Interim Order or any successor Financing Order."

(e)       ""**Case**" shall have the meaning given such term in the Ratification and Amendment Agreement."

(f)       ""**Cash Management Order**" shall mean that certain Order (I) Authorizing the Seller to (A) Continue Cash Management Systems, (B) Maintain Existing Bank Accounts and Business Forms, and (C) Maintain Existing Investment Practices, to be entered by the Bankruptcy Court."

(g)        ""**Committee**" means, collectively, any official committee of unsecured creditors and any other official committee appointed in the Case under section 1102 of the Bankruptcy Code."

(h)       ""**Debtor**" or "**Seller**" shall mean, Short Bark Industries, Inc., as debtor and debtor-in-possession, and its successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed as their legal representative or with respect to the property of the estate of such entity whether under chapter 11 of the Bankruptcy Code or any subsequent chapter 7 case and its successor upon conclusion of the Case of such entity)."

(i)       ""**DIP Collateral**" shall mean all now owned and hereafter acquired personal property and fixtures, and proceeds thereof, (including proceeds of proceeds) including without limitation: Accounts, including health-care insurance receivables; Chattel Paper; Inventory; Equipment; Instruments, including Promissory Notes; Investment Property; Documents; Deposit Accounts; Letter of Credit Rights; General Intangibles; Supporting Obligations; and all collateral and/or security granted and/or securities pledged to the Purchaser, by the Seller pursuant to the Pre-Petition Documents, DIP Documents and Financing Order."

(j)       ""**DIP Documents**" shall mean the Pre-Petition Documents as in effect immediately following the Petition Date, as ratified and amended by the Ratification and Amendment Agreement and any and all other documents and agreements executed in connection therewith."

(k)    ""**DIP Liens**" shall mean the liens and security interests granted by the Seller to Purchaser to secure the Post-Petition Obligations of Seller under the DIP Documents."

(l)    ""**DIP Obligations**" shall mean all of the Seller's liabilities and obligations under the DIP Documents and any related Financing Order, including, without limitation, all fees and expenses, and its obligation to provide the Purchaser with adequate protection of their interests in the Pre-Petition Collateral and other property to be used, sold, leased or otherwise disposed of by the Seller after the commencement of the Case under the terms of any Financing Order (including, without limitation, coverage as to the account of any loss, damages, depletion, diminution or depreciation resulting from the Seller's use (or in the case of inventory, sale) of such property (unless otherwise specified, DIP Obligations shall constitute "Obligations" under the Agreement and this Ratification and Amendment Agreement)."

(m)    ""**Effective Date**" shall have the meaning given to such term in the Ratification and Amendment Agreement."

(n)    ""**Final Order**" shall mean a Final Order (acceptable in form and substance to the Purchaser) entered or to be entered by the Bankruptcy Court authorizing the secured post-petition financing under the Documents contemplated under the Ratification and Amendment Agreement."

(o)    ""**Financing Order**" shall mean, collectively, the Interim Order, the Final Order and such other orders relating thereto or authorizing the granting of credit by the Purchaser to the Seller on an emergency, interim or permanent basis, pursuant to sections 364(c)(1), (c)(2), (c)(3) and (d) of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Case."

(p)    ""**Interim Order**" shall mean an Interim Order (acceptable in form and substance to Purchaser) entered by the Bankruptcy Court authorizing the secured post-petition financing under the Documents contemplated under the Ratification and Amendment Agreement."

(q)    ""**New Default**" shall have the meaning given such term in the Ratification and Amendment Agreement."

(r)    ""**Overbid APA**" shall mean that certain Asset Purchase Agreement by and among Short Bark Industries, Inc., and the successful bidder at any Auction conducted by the Seller in form and substance satisfactory to Agent, as the same may be amended, restated, supplemented or otherwise modified (provided however, that any amendment, restatement, supplement or other modification, must also be in form and substance satisfactory to the Purchaser)."

(s)    ""**Petition Date**" shall have the meaning given such term in the Ratification and Amendment Agreement."

5

(t)      ""**Permitted Priority Liens**" shall mean (i) solely with respect to the real property and improvements owned by the Seller, those liens, security interests and encumbrances existing as of the Petition Date and (ii) those liens listed in <u>Schedule A</u> attached hereto."

(u)      ""**Pre-Petition Collateral**" shall mean all now owned and hereafter acquired personal property and fixtures, and proceeds thereof, (including proceeds of proceeds) including without limitation: Accounts; Chattel Paper; Inventory; Equipment; Instruments, including Promissory Notes; Investment Property; Documents; Deposit Accounts; Letter of Credit Rights;  General Intangibles;  Supporting Obligations; and  all collateral and/or security granted and/or securities pledged to the Purchaser, by the Seller pursuant to the Pre-Petition Documents."

(v)      ""**Pre-Petition Documents**" shall mean the Factoring and Security Agreement, dated as of January 10, 2013, as amended by that certain Amendment to Factoring and Security Agreement, dated as of May 14, 2015, that certain Amendment to Factoring and Security Agreement, dated as of January 7, 2016, that certain First Amendment to Forbearance Agreement dated January 25, 2017; second, to May 1, 2017, pursuant to that certain Second Amendment to Forbearance Agreement dated April 3, 2017; and third, to August 31, 2017, pursuant to that certain Third Amendment to Forbearance Agreement dated June 8, 2017, all UCC financing statements, in each case by and among the Seller and Purchaser (and as applicable Lisa Helde Janke) as in effect immediately prior to the Petition Date."

(w)      ""**Pre-Petition Obligations**" shall mean all Obligations of the Seller to the Purchaser under the Pre-Petition Documents and outstanding as of the Petition Date as specified on <u>Schedule B</u> to the Ratification and Amendment Agreement, including, but not limited to all Obligations in respect of the purchase of Seller's Accounts, plus accrued and accruing interest, fees, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses earned or incurred by the Purchaser under the Pre-Petition Documents, and all other debts, liabilities and obligations of the Seller thereunder."

(x)      ''**Professional Fees**" shall mean the reasonable fees, costs and expenses of the attorneys, accountants, and other professionals retained, with the approval of the Bankruptcy Court, by the Seller and the Committee (who shall each be referred to herein as a "Professional")."

(y)      ""**Ratification and Amendment Agreement**" shall mean that certain Ratification and Amendment Agreement dated as of July [●], 2017, by and among the Seller and the Purchaser, including as amended, supplemented, modified and/or restated from time to time."

(z)      ""**Released Parties**" shall have the meaning given to such term in the Ratification and Amendment Agreement."

(aa)      ""**Specified Events of Default**" shall mean each of the Events of Default set forth on <u>Schedule D</u> attached to the Ratification and Amendment Agreement."

(bb)  ""**Stalking Horse APA**" shall mean that certain Asset Purchase Agreement by and among Short Bark Industries, Inc., and a stalking horse purchaser in form and substance satisfactory to Purchaser, as the same may be amended, restated, supplemented or otherwise modified (provided however, that any amendment, restatement, supplement or other modification, must also be in form and substance satisfactory to the Purchaser)."

(cc)  ""**Termination Date**" shall have the meaning given such term in Section 13.1 of this Agreement."

(dd)  ""**Variance**" shall have the meaning given such term in Section 6.24 of this Agreement."

3.2    **Definitions.** Section 31 of the Agreement is hereby amended by replacing the following definitions with the definitions below:

(a)  "**31.8** "**Collateral**" – All now owned and hereafter acquired personal property and fixtures, and proceeds thereof, (including proceeds of proceeds) including without limitation:

31.8.1  Accounts, including health-care insurance receivables;

31.8.2  Chattel Paper;

31.8.3  Inventory;

31.8.4  Equipment;

31.8.5  Instruments, including Promissory Notes;

31.8.6  Investment Property;

31.8.7  Documents;

31.8.8  Deposit Accounts;

31.8.9  Letter of Credit Rights;

31.8.10 General Intangibles;

31.8.11 Supporting Obligations; and

31.8.12 all collateral and/or security granted and/or securities pledged to the Purchaser, by the Seller pursuant to the Documents (including, without limitation, the Agreement, DIP Documents, DIP Orders), including, without limitation, all Pre-Petition Collateral and all DIP Collateral."

(b)  "**31.22 "Maximum Amount**" means $[●]."

7

(c)      ""**Documents**" shall mean, collectively Pre-Petition Documents and the DIP Documents, the Financing Orders and all other agreements, documents, instruments and certificates heretofore or hereafter executed or delivered by the Seller or Purchaser in connection with any of the foregoing, as the same may be amended, modified or supplemented from time to time."

3.3      **Payment of Pre-Petition Obligations.** A new <u>Section 1.4</u> is hereby added to <u>Section 1</u> of the Agreement in the appropriate location as follows:

"1.4      <u>Payment of Pre-Petition Obligations</u>. Upon the closing of the sale under the Stalking Horse APA or Overbid APA, as applicable, the proceeds of such sale shall be paid at the closing of such sale to the Purchaser to pay the Pre-Petition Obligations and DIP Obligations.

3.4      **Bankruptcy Related Items.** <u>Sections 8.9</u> through <u>8.12</u> are hereby added to the Agreement in the appropriate location as follows:

"**8.9.    <u>Budget</u>.**

(a)      Subject to <u>clause (b)</u> below, the Seller shall meet and comply, in all material respects, with the Budget attached hereto as <u>Schedule 8.9</u>, including, without limitation, as to disbursements, cash receipts and expenditures, subject to the Variance. Notwithstanding anything to the contrary set forth in any provision of this Agreement, the proceeds of any financing Loans shall be used by the Seller solely in accordance with <u>Section 2.06</u> and subject in all respects to the expenditure limitations set forth in the Budget that is attached hereto as <u>Schedule 8.9</u>, subject to the Variance.

(b)      No portion of the Carve-Out (as defined in the Interim Order) or any other proceeds of the DIP Financing may be used to investigate, litigate, object, contest or challenge in any manner or raise any defenses or offsets to the debt, liens, security interests, claims or collateral position of the Purchaser under the DIP Documents or Pre-Petition Documents or any other claims against the Purchaser or their affiliates owned or controlled by the Purchaser, whether by challenging the validity, extent, amount, perfection, priority or enforceability of the indebtedness under the DIP Documents or Pre-Petition Documents or the validity, perfection or priority of any pledge, security interest or lien with respect thereto or any other rights or interests or replacement liens with respect thereto or any other rights or interests of the Purchaser, or by seeking to subordinate or recharacterize the DIP Financing or Pre-Petition Obligations or disallow any claim, pledge, security interest or lien by asserting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the Purchaser, or any of their officers, directors, agents, attorneys, representatives, or employees. In addition, the Carve-Out (as defined in the Interim Order) and any other proceeds of the DIP Financing shall not be used in connection with (i) preventing, hindering or delaying (directly or indirectly) the Purchaser's enforcement or realization upon the Collateral or DIP Collateral once an Event of Default has occurred, (ii) selling or otherwise disposing of the Collateral or DIP Collateral without the written consent of the Purchaser, (iii) using or seeking to use any insurance proceeds related to the

8

Collateral or DIP Collateral without the written consent of the Purchaser, or (iv) incurring indebtedness senior to the DIP Liens other than in accordance with the DIP Documents.

(c)     The Seller shall not permit or suffer to exist a variance ("Variance") of the Budget which would have an adverse financial effect (in the sole discretion of the Purchaser) on the Seller, individually or in the aggregate, without the consent of the Purchaser (in its absolute and sole discretion). In addition and not in limitation of the foregoing, the Seller shall not permit or suffer to exist: (x) actual cash receipts that are less than [ninety-five percent (95%)] of the projected amounts set forth in the Budget, by line item or in the aggregate, tested weekly and on a cumulative basis; or (y) actual cash disbursements that are greater than [one hundred and five percent (105%)] of the projected amounts set forth in the Budget (excluding fees and expenses of Professionals, which shall not be subject to any upward variance), by line item or in the aggregate, tested weekly and on a cumulative basis, provided that savings accrued during any applicable period may be utilized in future periods; .

(d)     Beginning with the first week after the Petition Date and for each week thereafter, the Seller shall deliver to the Purchaser, not later than Wednesday of such week and at such other times as the Purchaser may request, a compliance certificate of the chief financial officer in form and substance satisfactory to the Purchaser, in its sole discretion, certifying that the Seller is in compliance with this Section 8.9 and that no default or Event of Default has occurred and is continuing or, if a default or Event of Default has occurred and is continuing, a statement as to the nature thereof and the steps being taken to remedy such default or Event of Default.

**8.10.   Transactions.** The Seller shall use its best efforts to sell its assets and business operations as promptly as possible, pursuant to section 363 of the Bankruptcy Code, pursuant to the Stalking Horse APA or Overbid APA, as applicable, that shall generate liquidity in an amount sufficient to enable the Seller to pay all net proceeds of such sale to Purchaser in cash on account of the Obligations, and on terms and conditions satisfactory to Purchaser in its sole and absolute discretion (one or more such transactions, collectively, the "Transaction").     Any asset purchase agreement(s), arrangements, pleadings or other documents relating to such Transaction which the Seller shall enter into shall be acceptable to Purchaser in its sole and absolute discretion.   In furtherance and not in limitation of the foregoing, and unless otherwise agreed to by the Purchaser, in its absolute and sole discretion, the Seller shall comply with the following milestones (collectively, the "Transaction Benchmarks") in all material respects:

(a)     Motion to Approve Bidding Procedures.   No later than July 20, 2017, the Seller shall have filed a motion to approve proposed bidding procedures and a timeline to consummate a Transaction (which shall include, without limitation, an Auction date, the requirement that the sale be for cash consideration acceptable to Purchaser in its sole and absolute discretion, the timing of a proposed sale, and deadlines for completing due diligence and submitting offers/bids) and designating a stalking horse bidder pursuant to a Stalking Horse APA or to an alternative higher bidder pursuant to an Overbid APA, as applicable, providing for a Purchase Price of no less than $5,000,000.00, subject to adjustment as set forth in a Stalking Horse APA or Overbid APA, as applicable, which

9

shall be in form and substance satisfactory to Purchaser;

(b)     Financing Order. No later than July 14, 2017, the Seller shall file a motion seeking Bankruptcy Court approval of the DIP Financing described herein in form and substance satisfactory to the Purchaser. The Bankruptcy Court shall have entered Interim Order no later than July 19, 2017 and a Final Order approval no later than August 4, 2017.

(c)     Approval of Bidding Procedures.  On or before August 4, 2017, the Bankruptcy Court shall have entered an order approving Seller's proposed bidding procedures and timeline to consummate a Transaction, which shall be in form and substance satisfactory to Purchaser;

(d)     Final Auction.  On or before August 21, 2017, the Seller shall have held an auction (the "Auction"), made a determination approved by Purchaser as to the highest or best bid with respect to a Transaction, and accepted such bid (the "Accepted Bid");

(e)     Sale Order.  On or before August 24, 2017, the Bankruptcy Court shall have entered an order approving the Transaction with respect to the Accepted Bid, which order shall be in form and substance satisfactory to the Purchaser in its sole and absolute discretion; and

(f)     Closing of Sale; Remittance of Proceeds.   On or before August 31, 2017, the Seller shall close the Transaction and concurrently with such closing shall deliver the indefeasible payment to the Purchaser, of any and all proceeds therefrom as a permanent reduction of the DIP Obligations, the Pre-Petition Debt and other Obligations (in that order of priority).  Amounts applied to the reduction of the Pre-Petition Debt shall be applied to the Obligations in the Purchaser's sole and absolute discretion;

(g).  Other Sales. The Seller shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of the Purchaser, except for dispositions of inventory in the ordinary course of business in accordance with the Financing Orders.

### 8.11.  Bankruptcy Court Reports and Related Items; DIP Order.

(a)     General Information and Reports. In addition to the reporting requirements set forth in this Agreement, until the Obligations have been indefeasibly repaid in full in cash, the Seller shall promptly provide the Purchaser with copies of (i) all financial reports, schedules and other materials or information related to the Collateral at any time furnished by the Seller, or on behalf of the Seller, to the Bankruptcy Court, the United States Trustee, any other lender or creditor of the Seller, any purchaser of the Seller's business operations or assets, any creditors' committee or any of the Seller's shareholders, concurrently with the delivery thereof. The Seller shall keep the Purchaser fully informed of any efforts by Seller to consummate a Transaction, and upon the Purchaser's request, shall promptly provide the Purchaser with copies of all material documents, schedules or materials provided to any purchaser of the Seller's assets or business operations. In addition to and not in lieu of the foregoing, the Seller shall

provide the Purchaser with copies of any and all notices of default or other material events under any purchase agreement or other similar agreement, simultaneously with the issuance or receipt thereof, as applicable.

(b)    <u>Weekly Reports</u>. Weekly, not later than Wednesday for the immediately preceding fiscal week, (i) a "<u>Budget Variance Report</u>" (in form and substance satisfactory to Purchaser in its sole discretion), which sets forth: (a) a detailed reconciliation analysis of actual results compared to projected results of the Budget for the immediately preceding calendar week and the cumulative period-to-date; and (b) a written explanation of all material variances, (ii) a detailed report of all cash balances and collections and (iii) an operating statistics report.

(c)    <u>Financing Order</u>. The Seller shall file a motion seeking Bankruptcy Court approval of the DIP Financing described herein in form and substance satisfactory to the Purchaser by no later than the Petition Date.

**8.12.    Assumption or Rejection of Leases.** Prior to the date upon which the Obligations have been indefeasibly repaid in full in cash, the Seller shall not assume or reject any leases of real property or any material executory contract(s) unless the Purchaser consents to such assumption or rejection in writing in advance, provided that any such consent may be granted or withheld by Purchaser in its reasonable discretion."

3.5    **Events of Default**.  Section 12.1(b) of the Agreement is hereby deleted in its entirety and replaced with the following text:

"(b)    [Intentionally Omitted]."

3.6    **Termination; Effective Date.**  Section 13 of the Agreement is hereby deleted in its entirety and replaced with the following text:

13.1    This Agreement, as amended by the Ratification and Amendment Agreement, will be effective upon execution by the Seller and Purchaser and approval by the Bankruptcy Court upon entry of the Interim Order (the "<u>Effective Date</u>") and will remain in full force and effect upon the earlier to occur of: (a) August 31, 2017; (b) closing of the sale under the Stalking Horse APA or Overbid APA, as applicable; and (c) the date of the occurrence of a New Default (the "**Termination Date**").

3.7    **Budget**. A new <u>Schedule 8.9</u> (Budget) is hereby added to the Agreement in the appropriate order in the form of <u>Schedule C</u> attached hereto.

**4.    DEFAULT INTEREST**. Notwithstanding anything in the Agreement to the contrary, the Seller hereby acknowledges and agrees that based on the continuance of the Specified Events of Default, the Pre-Petition Obligations accrued interest from September 1, 2016 through and the Effective Date at the then applicable Default Rate. From and after the Effective Date, the Obligations shall continue to accrue interest at the Default Rate and shall

PHIL1 6330701v.2

accrue other interest, fees and charges in accordance with the terms of the Ratification and Amendment Agreement.

**5.** **CASH MANAGEMENT**. Notwithstanding anything in the Agreement to the contrary, the Seller shall comply in all respects with the Bankruptcy Court's Cash Management Order to maintain a cash management system substantially similar to such system existing on the Petition Date and otherwise acceptable to Purchaser in its sole and absolute discretion. The Seller agrees that it shall not alter the existing flow of funds, open accounts or make other material changes to the cash management system that existed on the Petition Date without the approval of both the Purchaser and the Bankruptcy Court. Additionally, the Seller covenants and agrees that all payments received from obligors and other persons shall be directed from depository banks into the accounts specified in the Agreement and in accordance with the terms and conditions therein and the other Documents.

**6.** **MANAGEMENT**. The Seller or any chapter 11 trustee appointed in these Cases shall retain officers or management level employees that are acceptable to Purchaser in its sole discretion.

**7.** **COOPERATION; OTHER INFORMATION**. The Seller shall cooperate fully and reasonably shall provide such other financial and other information concerning the financial, business and legal affairs of the Seller as the Purchaser may from time to time reasonably request.

**8.** **CONFIRMATION OF LIENS**. The Seller hereby acknowledges and confirms that all of the Obligations are and shall be secured by valid and perfected, first priority liens and security interests in all of the Collateral (except for any Permitted Liens) in each case, enforceable against the Seller, in accordance with its terms.

**9.** **EVENTS OF DEFAULT.** In addition to and without in any way limiting or substituting for the Events of Default outlined in the Agreement and the other Documents, the following shall constitute additional Events of Default under the Agreement and other Documents (unless waived in writing by the Purchaser in its absolute and sole discretion), and shall not be subject to any grace, remedy or cure period, except to the extent specifically set forth in this Ratification and Amendment Agreement (each a "New Default"):

(a) **Breach or Non-Compliance.** The Seller's breach, default, violation or failure to timely and fully comply with any covenant or agreement set forth in this Ratification and Amendment Agreement or any other DIP Documents or any other agreement, document or instrument executed in connection herewith;

(b) **Breach or Termination of APA**. (a) The Seller's breach, default, violation or failure to comply in any respect with the terms and provisions of the Stalking Horse APA or Overbid APA, as applicable, or any other agreement providing for the sale, transfer or disposition of any of the Seller's assets or (b) any termination, revocation or cancellation of the Stalking Horse APA or Overbid APA, as applicable, or any other agreement providing for the sale, transfer or disposition of any of the Seller's assets;

12

(c)    **Budget.** The Seller's breach, default, violation or failure to comply in any respect with the Budget, subject to the Variance, including, without limitation, as to disbursements and cash receipts or a breach, default or violation of <u>Section 8.9</u> of the Agreement;

(d)    **Financing Orders.** A breach or failure to comply with any term, covenant, representation, warranty or requirement of any Financing Order or any other material order of the Bankruptcy Court;

(e)    **Adequate Protection.** Except with respect to payments as permitted by any order of the Bankruptcy Court approving a "first day" motion (and included in the Budget), an order shall be entered by the Bankruptcy Court permitting the payment of, or granting adequate protection with respect to, any obligations of the Seller other than the Pre-Petition Debt, in each case, without the consent of the Purchaser;

(f)    **Liens.** The granting in favor of any Person other than the Purchaser of (i) a security interest or lien upon any property of the Seller or the Seller's estate, or (ii) a claim against the Seller, which in either instance has priority over, or is *pari passu* with, other security interests, liens or claims in favor of Purchaser, except: (x) to the extent that such Person had a security interest or lien upon any property of the Seller on the Petition Date which had priority over the security interests, liens or claims of the Purchaser existing on the Petition Date, or (y) to the extent otherwise required or permitted under any Financing Order or any other order of the Bankruptcy Court;

(g)    **Security Interests.** This Agreement, the Financing Orders or any other Document, shall for any reason fail or cease to create a valid and perfected and, except to the extent permitted by the terms hereof or thereof, first priority lien in favor of the Purchaser on any Collateral purported to be covered thereby;

(h)    **Conversion of Case.** The dismissal of the Case or the entry of an order converting the Case to a case under Chapter 7 of the Bankruptcy Code;

(i)    **Appointment of Trustee or Examiner.** The entry of an order appointing a trustee, responsible officer or an examiner with expanded powers in the Case not acceptable to the Purchaser;

(j)    **Management.** The Seller or any chapter 11 trustee appointed in these Cases retains an officer or management level employee not acceptable to Purchaser;

(k)    **Relief from Automatic Stay.** An order shall be entered by the Bankruptcy Court granting relief from the automatic stay to any creditor of the Seller with respect to any claim against the Seller in an amount equal to or exceeding $75,000 in the aggregate (other than for any claim covered under the Seller's insurance and with respect to which the Seller has duly notified the insurer and the insurer has confirmed such coverage (and has not otherwise disputed or rejected the Seller's claim)) or for Collateral with a value in excess of $250,000;

(l)    **Non-Renewal; Reversal of Financing Orders.** The termination or non-renewal of this Ratification and Amendment Agreement  or the Financing Order as a result of the objection of any third party being sustained by the Bankruptcy Court unless such objection is stayed on timely appeal, or if the Financing Order shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of the Purchaser;

(m)    **Prohibited Seller Actions**. Without the prior written consent of the Purchaser, the Seller shall take any action, including the filing of an application, motion or other pleading, requesting or seeking authority for the Seller (A) to obtain additional financing under sections 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to this Agreement; (B) to grant any lien other than Permitted Liens upon or affecting any Collateral; (C) except as provided in the Financing Orders (as applicable), to use, or grant any lien on (other than Permitted Liens), cash collateral of the Purchaser under section 363(c) of the Bankruptcy Code; (D) to take any other action or actions materially adverse to Purchaser or its rights and remedies hereunder; or (E) the entry of any order by the Bankruptcy Court in the Case granting relief as described in subclauses (A) through (D) of this clause (k);

(n)    **Management**.  Any act, condition or event occurring that results in any of the (a) removal and/or replacement of the current independent board member, (b) increase of the number of board members of Seller, (c) the removal of the current chief restructuring officer, or (d) failure of Seller to employ officers or management level employees acceptable to Purchaser.

(o)    **Claims Against Purchaser.** Any claim is asserted against Purchaser;

(p)    **Final Order.** The failure by the Bankruptcy Court to enter a Final Order approving the factoring contemplated by the Agreement, as amended by this Ratification and Amendment Agreement, on or before 4:00 p.m. (Eastern Standard Time) on or before August 4, 2017 (or such later date agreed to by Purchaser and Seller);

(q)    **Transaction Benchmarks**. A breach or failure to comply with any of the Transaction Benchmarks set forth in this Ratification and Amendment Agreement;

(r)    **Termination Date.** The occurrence of any condition or event that permits Purchaser to exercise any of the remedies set forth in the Financing Order, including, without limitation, any event which causes the occurrence of the "Commitment Termination Date" as such term is defined in the Financing Order, in each case without any notice, grace and/or cure period of any kind (except to the extent, if any, required or permitted under any Financing Order or any other order of the Bankruptcy Court); and

(s)    **Material Adverse Effect.** Any act, condition or event occurring after the date of the commencement of the Case that has a Material Adverse Effect upon the assets of the Seller or the Collateral or the rights and remedies of the Purchaser under the Agreement or other Documents, subject to reasonable allowances for the impact of: (a) the Budget and limitations under this Ratification and Amendment Agreement  and (b)

14

the Seller's filing of the Case on the Petition Date, as the same are determined by Purchaser in its reasonable discretion.

**10.**    **REMEDIES.** Notwithstanding anything herein to the contrary, but subject in each case to the provisions of the Financing Orders, the Seller's right to request the purchase of Accounts under the Agreement, as amended by this Ratification and Amendment Agreement (and the Purchaser's commitment to purchase the Seller's Accounts and extend any other financial accommodations) to fund the expenditures set forth in the Budget, and the Purchaser's consent to the Seller's use of property of the estate (including cash collateral) in the ordinary course, shall automatically expire and terminate without further notice, demand or request on the Termination Date. Upon the occurrence of the Termination Date, (a) the DIP Obligations shall become immediately due and payable and shall be indefeasibly repaid in full in cash, (b) the Purchaser shall be entitled to exercise any and all rights and remedies granted to it under the Documents, the DIP Documents or pursuant to the terms of any Financing Order and the Purchaser shall have relief from the automatic stay and may foreclose on all or any portion of the Collateral, and (c) the Purchaser shall be entitled to declare the occurrence of the Termination Date and terminate the DIP Financing and any other DIP Documents as to any future liability or obligation of the Purchaser, but without affecting any of the DIP Obligations, the DIP Liens or post-petition administrative superpriority claim status.

**11.**    **REPRESENTATIONS AND WARRANTIES.** The Seller hereby represents and warrants to the Purchaser as follows: (a) it is duly incorporated, organized or formed, validly existing and in good standing under the laws of its jurisdiction of organization, subject to the entry of the Financing Orders; (b) the execution, delivery and performance by it of this Ratification and Amendment Agreement  and all other Documents executed and/or delivered in connection herewith are within its powers, have been duly authorized, and do not contravene (i) its articles of incorporation or other organizational documents, or (ii) any applicable law, statute, regulation, ordinance, tariff or order; (c) except as provided under any Financing Order, as applicable, no consent, license, permit, approval or authorization of, or registration, filing or declaration with any Governmental Authority or other Person is required in connection with the execution, delivery, performance, validity or enforceability of this Ratification and Amendment Agreement or any other Documents executed and/or delivered in connection herewith by or against it; (d) this Ratification and Amendment Agreement  and all other Documents executed and/or delivered in connection herewith have been duly executed and delivered by it; (e) the Chapter 11 Case was commenced on the Petition Date in accordance with Applicable Law and notice of (i) the motion seeking approval of this Ratification and Amendment Agreement and the Financing Orders, (ii) the hearing for the entry of the Interim Order, and (iii) the hearing for the entry of the Final Order, has been or will be given, and the Seller shall give on a timely basis as specified in the Interim Order or Final Order, as applicable, all notices required to be given to all parties specified in such notices, (f) after giving effect to the Interim Order and any successor Financing Order, this Ratification and Amendment Agreement  and all other Documents executed and/or delivered in connection herewith constitute its legal, valid and binding obligation enforceable against it in accordance with its terms; (g) after giving effect to this Ratification and Amendment Agreement, the Interim Order and any successor Financing Order, it is in compliance with all covenants and agreements in the Documents and, except for the Specified Events of Default, no default or Event of Default exists, has occurred and is continuing or would result by the execution, delivery or performance of this Ratification and Amendment

15

Agreement, (h) after giving effect to this Ratification and Amendment Agreement, the Interim Order and any successor Financing Order, the representations and warranties contained in the Documents shall be true and correct in all material respects, except to the extent already qualified by materiality, in which case they shall be true and correct in all material respects, subject to reasonable allowances for the impact of: (i) the Budget and limitations under this Ratification and Amendment Agreement and (ii) the Seller's filing of the Case on the Petition Date, as the same are determined by the Purchaser in its reasonable discretion, and (i) upon entry of the Financing Orders, the liens and security interests of the Purchaser on the Collateral shall be valid and perfected first priority liens, subject only to Permitted Liens and the Carve-Out.

12. **RELEASE.** THE SELLER HEREBY ACKNOWLEDGES AND AGREES THAT IT HAS NO DEFENSE, COUNTERCLAIM, OFFSET, CROSS-COMPLAINT, CLAIM OR DEMAND OF ANY KIND OR NATURE WHATSOEVER THAT CAN BE ASSERTED TO REDUCE OR ELIMINATE ALL OR ANY PART OF ITS LIABILITY TO REPAY THE OBLIGATIONS OR TO SEEK AFFIRMATIVE RELIEF OR DAMAGES OF ANY KIND OR NATURE FROM THE PURCHASER. THE SELLER HEREBY VOLUNTARILY AND KNOWINGLY RELEASES AND FOREVER DISCHARGES THE PURCHASER AND EACH OF ITS AFFILIATES, PREDECESSORS, AGENTS, EMPLOYEES, COUNSEL, SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE "**RELEASED PARTIES**") FROM ALL POSSIBLE CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, OBLIGATIONS, DEBTS AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT OR CONDITIONAL, OR AT LAW OR IN EQUITY, IN ANY CASE ORIGINATING IN WHOLE OR IN PART ON OR BEFORE THE DATE THIS RATIFICATION AND AMENDMENT AGREEMENT IS EXECUTED THAT THE SELLER MAY NOW OR HEREAFTER HAVE AGAINST THE RELEASED PARTIES, IF ANY, IRRESPECTIVE OF WHETHER ANY SUCH CLAIMS ARISE OUT OF CONTRACT, TORT, VIOLATION OF LAW OR REGULATIONS, OR OTHERWISE, AND THAT ARISE FROM ANY LOANS BETWEEN THE PURCHASER AND Seller, THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER THE AGREEMENT OR OTHER DOCUMENTS, AND/OR NEGOTIATION FOR AND EXECUTION OF THIS RATIFICATION AND AMENDMENT AGREEMENT, INCLUDING, WITHOUT LIMITATION, ANY CONTRACTING FOR, CHARGING, TAKING, RESERVING, COLLECTING OR RECEIVING INTEREST IN EXCESS OF THE HIGHEST LAWFUL RATE APPLICABLE. THE SELLER WAIVES THE BENEFITS OF ANY LAW, WHICH MAY PROVIDE IN SUBSTANCE: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE SELLER DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MUST HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE OTHER PARTY." THE SELLER UNDERSTANDS THAT THE FACTS WHICH IT BELIEVES TO BE TRUE AT THE TIME OF MAKING THE RELEASE PROVIDED FOR HEREIN MAY LATER TURN OUT TO BE DIFFERENT THAN IT NOW BELIEVES, AND THAT INFORMATION WHICH IS NOT KNOW KNOWN OR SUSPECTED MAY LATER BE DISCOVERED. THE SELLER ACCEPTS THIS POSSIBILITY, AND ASSUMES THE RISK OF THE FACTS TURNING OUT TO BE DIFFERENT AND NEW INFORMATION BEING DISCOVERED; AND THE SELLER FURTHER AGREES THAT THE RELEASE PROVIDED FOR HEREIN SHALL IN ALL RESPECTS CONTINUE TO BE EFFECTIVE

16

AND NOT SUBJECT TO TERMINATION OR RESCISSION BECAUSE OF ANY DIFFERENCE IN SUCH FACTS OR ANY NEW INFORMATION, NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH HEREIN.

**13.** **CONDITIONS PRECEDENT TO EFFECTIVE DATE.** The Purchaser's obligations to enter into this Ratification and Amendment Agreement  and perform its obligations hereunder are subject to the condition precedent that the Purchaser shall have received the following documents and other items, satisfactory to the Purchaser, in its sole and absolute discretion, duly executed where appropriate by authorized representatives of the Seller (subject to Purchaser's right to waive any such condition precedent in its sole discretion) (the "Effective Date") and notwithstanding anything herein to the contrary, upon the Bankruptcy Court's approval and the execution of this Ratification and Amendment Agreement by the Seller, then Purchaser immediately shall be entitled to all of the rights and benefits of this Ratification and Amendment Agreement:

(i) **Ratification and Amendment Agreement.** Receipt by Purchaser of this Ratification and Amendment Agreement duly executed by the Seller and the Purchaser;

(ii) **Subordination Agreement.** Receipt by Purchaser of a duly executed copy of a ratification and reaffirmation of the Subordination Agreement by each of the parties thereto, in form and substance satisfactory to the Purchaser in its sole discretion;

(iii) **Budget.** Receipt by the Purchaser of a copy of the Budget (including, without limitation, detailed professional fee information) together with a certificate from the chief executive officer or chief financial officer of the Seller stating that such Budget has been prepared on a reasonable basis and in good faith and is based on assumptions believed by the Seller to be reasonable at the time made and from the best information then available to it, in each case, in form and substance satisfactory to the Purchaser;

(iv) **Officer's Certificate.** Receipt by Purchaser of a certificate from an Authorized Officer of the Seller attesting to the resolutions of the Seller's Board of Directors authorizing the filing of the Case and authorizing its execution, delivery, and performance of this Ratification and Amendment Agreement and the other documents related thereto to which the Seller is a party and authorizing specific officers of Seller to execute the same;

(v) **Governing Documents.** Receipt by Purchaser of the Seller's certificate of incorporation or similar document and bylaws, as amended, modified, or supplemented, certified by the secretary of the Seller;

(vi) **Representations.** The following statements shall be true and correct: the representations and warranties contained in this Ratification and Amendment Agreement, Article V of the Agreement and in each other Document, certificate or other writing delivered to the Purchaser pursuant hereto or thereto on and as of Effective Date

are true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Effect" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of the Effective Date as though made on and as of such date, except to the extent that any such representation or warranty expressly relates solely to an earlier date (in which case such representation or warranty shall be true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Effect" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of such earlier date);

(vii)    **No Defaults.** After giving effect to this Ratification and Amendment Agreement, no default or Event of Default shall have occurred and be continuing except for the Specified Events of Default;

(viii)    **Payment of Fees.** Payment of all outstanding fees and expenses owing to Purchaser by the Seller pursuant to the Documents and all reasonable attorneys' fees, charges and expenses incurred by the Purchaser in connection with the drafting, negotiation and execution of this Ratification and Amendment Agreement, and Seller hereby confirms the Purchaser's authority to satisfy such outstanding fees and expenses;

(ix)    **Compliance.** The Seller shall be in compliance with the notice and other requirements of the Bankruptcy Code and applicable Bankruptcy Rules (as defined in the Interim Order) with respect to any relevant Financing Order in a manner acceptable to Purchaser and its counsel;

(x)    **Entry of Interim Order.** The Interim Order shall have been entered by the Bankruptcy Court on or before July 18, 2017, in form and substance satisfactory to the Purchaser, and substantially in the form attached hereto as <u>Schedule C</u>, and the Purchaser shall have received a true and complete copy of such order, and such order shall be in full force and effect and shall not have been reversed, modified, amended, stayed, or vacated, absent prior written consent of the Purchaser. The Interim Order shall (i) find and conclude that the Documents were negotiated in good faith and that the Purchaser is entitled to the protections of Section 364(e) of the Bankruptcy Code and (ii) order that, as of the Petition Date, the liens and security interests in favor of the Purchaser referred to in Section 14 shall be valid and perfected liens and security interests in the Collateral, prior to all other liens and security interests in the Collateral and subject only to Permitted Priority Liens and payment of the Carve-Out;

(xi)    **Satisfactory Proceedings.** All proceedings taken in connection with the transactions contemplated by this Ratification and Amendment Agreement  and all documentation and other legal matters incident thereto shall be satisfactory to the Purchaser and all motions and orders submitted to the Bankruptcy Court prior to the date hereof shall be in form and substance satisfactory to the Purchaser;

(xii)    **Approvals**. Seller shall have received each consent, license, permit, approval or authorization from any Governmental Authority or other Person that is required in connection with the execution, delivery, performance, validity or enforceability of this Ratification and Amendment Agreement or any other Documents executed and/or delivered in connection herewith by or against it;

(xiii)    **Insurance**.  Delivery to Purchaser of evidence that the Required Insurance is in full force and effect as required by Section 6.02(a) of the Agreement and such other insurance coverage with respect to the business and operations of the Seller as the Purchaser may request together with evidence of the payment of all premiums due in respect thereof for such period as the Purchaser may request;

(xiv)    **Other Documents**.  The Purchaser shall have received fully executed and legally binding copies of other assurances, certificates, documents, consents or opinions as the Purchaser or its counsel may require.

## 14.    SECURITY INTERESTS IN COLLATERAL; NO FILINGS REQUIRED.

14.1    The Seller hereby reaffirms as of the date of this Ratification and Amendment Agreement, each of the security interests and liens granted by Seller in favor of the Purchaser under the Agreement and other Documents and agrees and acknowledges that such security interests and liens shall continue from and after the date hereof and shall remain in full force and effect, in each case after giving effect to the Ratification and Amendment Agreement.

14.2    In addition to the security interests and liens granted by Seller in favor of Purchaser under the Agreement, as security for the full and timely payment and performance of all of the Obligations, upon entry of the Interim Order, the Seller hereby assigns, pledges and grants (or causes the assignment, pledge and grant in respect of any indirectly owned assets) to the Purchaser, for its benefit, pursuant to section 364(c)(1), section 364(c)(2), section 364(c)(3) and section 364(d) of the Bankruptcy Code, under this Ratification and Amendment Agreement, the other Documents and the Financing Orders, as applicable: (a) fully perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Seller and its estate may have (but subject only to the Carve-Out and the Permitted Priority Liens, as and to the extent expressly provided in the Interim Order or the comparable provision in the Final Order, as the case may be), in and upon the DIP Collateral.

14.3    Upon entry of the Interim Order or Final Order, as the case may be, the liens and security interests in favor of the Purchaser referred to in Section 13.1 above shall be valid and perfected liens on, and security interests in, the DIP Collateral, prior to all other liens on, and security interests in, the DIP Collateral, other than Permitted Priority Liens and subject to the Carve-Out. Such liens and security interests and their priority shall remain in effect until the Ratification and Amendment Agreement shall have been terminated and all Obligations shall have been repaid in cash in full.

14.4    Notwithstanding anything herein to the contrary and except as provided in the Interim Order, all proceeds received by the Purchaser from the DIP Collateral subject to the liens granted in Section 13.1 above or in any other Documents or by the Financing Orders shall be

19

subject to the prior payment of Carve-Out; provided, that no Person entitled to such Carve-Out shall be entitled to sell or otherwise dispose, or seek or object to the sale or other disposition, of any DIP Collateral.

14.5    Except for the Carve-Out, no costs or expenses of administration shall be imposed against the Purchaser or any of the DIP Collateral or the Purchaser in its capacity as Purchaser under the Pre-Petition Debt or the "Collateral" (as defined in the Pre-Petition Financing Agreements) under sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, and the Seller hereby waives for itself and on behalf of its estate in bankruptcy, any and all rights under sections 105, 506(c) (subject to entry of the Final Order) or 552, or otherwise, to assert or impose or seek to assert or impose, any such costs or expenses of administration against the Purchaser or any of the DIP Collateral.

14.6    The liens and security interests granted pursuant to Section 14.2 above may be independently granted by the Documents and by other Documents hereafter entered into.  This Ratification and Amendment Agreement, the Financing Orders and such other Documents supplement each other, and the grants, priorities, rights and remedies of the Purchaser hereunder and thereunder are cumulative.

14.7    The liens and security interests referred to herein shall be deemed valid and perfected solely by and upon entry of the Interim Order or the Final Order, as the case may be, and entry of the Interim Order shall have occurred on or before the date of any financing. Neither the Purchaser nor any other Person shall be required to file any financing statements, mortgages, certificates of title, notices of lien or similar instruments in any jurisdiction or filing office or to take any other action in order to validate or perfect any lien and security interest granted by or pursuant to this Ratification and Amendment Agreement, the Interim Order or the Final Order, as the case may be, or any other Document; provided, that the Purchaser shall be permitted to file any financing statements, mortgages, certificates of title, notices of lien or similar instruments in any jurisdiction or filing office and to take any other action with respect to the lien and security interest granted by or pursuant to this Ratification and Amendment Agreement, the Interim Order or the Final Order, as the case may be, or any other Document; provided, further that should the Purchaser so choose and attempt to file any financing statements, mortgages, certificates of title, notices of lien or similar instruments in any jurisdiction or filing office and to take any other action with respect to such lien or security interest, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the any liens and security interests granted herein by virtue of the entry of the Interim Order or the Final Order.

15.    **COSTS AND EXPENSES.**  Subject and pursuant to the terms of the Financing Orders, the Seller shall pay to Purchaser all of Purchaser's and/or its Affiliates' (a) out-of-pocket reasonable costs and expenses (including, without limitation, the reasonable fees and expenses of their respective professionals and advisors (including, without limitation, the Purchaser's legal counsel, search fees, filing and recording fees, documentation fees, appraisal fees, travel expenses and other fees and expenses) arising in connection with the preparation, negotiation, execution, delivery and administration of this Ratification and Amendment Agreement, the other Documents, the Obligations (including, without limitation, the DIP Obligations), the Case and all transactions contemplated by any of the foregoing, including, without limitation, any

20

amendment, modification, supplement, waiver or replacement of any of the foregoing and (b) all out-of-pocket expenses of the Purchaser and/or its Affiliates (including, without limitation, the reasonable fees and expenses their respective professionals and advisors (including, without limitation, the Purchaser's legal counsel, search fees, filing and recording fees, documentation fees, appraisal fees, travel expenses and other fees and expenses) in connection with the enforcement of this Ratification and Amendment Agreement, the other Documents, the Obligations (including, without limitation, the DIP Obligations), of any rights or remedies of the Purchaser and/or its Affiliates in connection with the Case (or any successor case or insolvency proceeding) and all transactions contemplated by any of the foregoing, including, without limitation, any amendment, modification, supplement, waiver or replacement of the foregoing. For the avoidance of doubt, the travel expenses and other costs of the Purchaser and/or its Affiliates and their respective professionals and advisors (including, without limitation, the Purchaser's counsel (which counsel may include main and any local counsel deemed necessary)) in connection with attending or otherwise participating in any hearing or other similar proceeding in the Case (or any successor case or insolvency proceeding) shall be reimbursable by the Seller pursuant to this Section 14.

16.    **LIMITED EFFECT.** In the event of a conflict between the terms and provisions of this Ratification and Amendment Agreement and the terms and provisions of the Agreement, the terms and provisions of this Ratification and Amendment Agreement  shall govern. In all other respects, except as specifically amended hereby, by any Financing Order or by any agreement or document executed by Seller in favor of Purchaser in connection herewith or therewith, the Agreement and other Documents shall remain in full force and effect and hereby are ratified and confirmed as so amended. Neither this Ratification and Amendment Agreement nor any agreement or document executed by any Seller in favor of Purchaser in connection herewith shall constitute a novation, satisfaction and accord, cure, release and/or satisfaction of the Agreement and/or other Documents, but shall constitute amendments and waivers of certain provisions thereof. The parties hereto agree to be bound by the terms and conditions of the Agreement and Documents as amended by this Ratification and Amendment Agreement, as though such terms and conditions were set forth herein and therein in full. Each reference in the Agreement and/or other Documents or any other document or instrument to any Documents or words of similar import shall mean and be a reference to the Documents as amended hereby.

17.    **MISCELLANEOUS**.

17.1    **No Waiver.** The execution, delivery and effectiveness of this Ratification and Amendment Agreement  shall not, except as expressly provided herein, be deemed to be an amendment or modification of, or operate as a waiver of, any provision of the Agreement or any other Document or any right, power or remedy of Purchaser, nor constitute a waiver of any provision of the Agreement or any other Document, or any other document, instrument and/or Agreement executed or delivered in connection therewith or of any default or Event of Default under any of the foregoing, in each case whether arising before or after the date hereof or as a result of performance hereunder or thereunder. This Ratification and Amendment Agreement shall not preclude the future exercise of any right, remedy, power or privilege available to Purchaser whether under the Ratification and Amendment Agreement, other Documents, at law or otherwise.

17.2    **Counterparts.** This Ratification and Amendment Agreement may be executed in any number of counterparts (including by facsimile or pdf), and by the different parties hereto on the same or separate counterparts, each of which shall be deemed to be an original instrument but all of which together shall constitute one and the same agreement. Each party agrees that it will be bound by its own facsimile or pdf signature and that it accepts the facsimile or pdf signature of each other party. The descriptive headings of the various sections of this Ratification and Amendment Agreement are inserted for convenience of reference only and shall not be deemed to affect the meaning or construction of any of the provisions hereof or thereof. Whenever the context and construction so require, all words herein in the singular number herein shall be deemed to have been used in the plural, and vice versa, and the masculine gender shall include the feminine and neuter and the neuter shall include the masculine and feminine.

17.3    **Amendments.** This Ratification and Amendment Agreement may not be changed, amended, restated, waived, supplemented, discharged, canceled, terminated or otherwise modified orally or by any course of dealing or in any manner other than as provided in the Agreement or the applicable Document or by an order of the Bankruptcy Court in form and substance satisfactory to Purchaser. This Ratification and Amendment Agreement shall be considered part of the Agreement and shall be a Document for all purposes under the Agreement and other Documents.

17.4    **Single Agreement.** This Ratification and Amendment Agreement, the Agreement, and the Documents constitute the final, entire Agreement and understanding between the parties with respect to the subject matter hereof and thereof and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements between the parties, and shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto and thereto. There are no unwritten oral agreements between the parties with respect to the subject matter hereof and thereof. If any provision of this Ratification and Amendment Agreement is adjudicated to be invalid under applicable laws or regulations, such provision shall be inapplicable to the extent of such invalidity without affecting the validity or enforceability of the remainder of this Ratification and Amendment Agreement which shall be given effect so far as possible.

17.5    **GOVERNING LAW.** THIS RATIFICATION AND AMENDMENT AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE CHOICE OF LAW PROVISIONS SET FORTH IN THE AGREEMENT AND SHALL BE SUBJECT TO THE WAIVER OF JURY TRIAL AND NOTICE PROVISIONS OF THE AGREEMENT, AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE. EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS FOR ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND THE OTHER DOCUMENTS TO WHICH IT IS A PARTY, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT THEREOF, TO THE NON-EXCLUSIVE GENERAL JURISDICTION OF THE BANKRUPTCY COURT AND, IF THE BANKRUPTCY COURT DOES NOT HAVE (OR ABSTAINS FROM) JURISDICTION, TO THE NON-EXCLUSIVE GENERAL JURISDICTION OF ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN THE STATE OF FLORIDA.

17.6    **Assignments.** The Seller may not assign, delegate or transfer this Ratification and Amendment Agreement or any of its rights or obligations hereunder or thereunder and any delegation, transfer or assignment in violation hereof shall be null and void. No rights are intended to be created under this Ratification and Amendment Agreement for the benefit of any third party donee, creditor or incidental beneficiary of Seller or any other Person other than Purchaser. Nothing contained in this Ratification and Amendment Agreement shall be construed as a delegation to Purchaser of the Seller's duties of performance, including, without limitation, any duties under any account or contract in which Purchaser has a security interest or lien. This Ratification and Amendment Agreement shall be binding upon the Seller and shall inure to the benefit of the Purchaser and its respective successors and permitted assigns. The Purchaser's respective ability to assign, sell or transfer all of any part of this Ratification and Amendment Agreement and shall be governed by the Agreement.

17.7    **Reaffirmation**. The Seller hereby (i) reaffirms its obligations under each of the Documents to which it is a party and (ii) except as specifically amended hereby, agrees that each of such Documents remain in full force and effect and are hereby ratified and confirmed as so amended. All representations and warranties made in this Ratification and Amendment Agreement shall survive the execution and delivery of this Ratification and Amendment Agreement and no investigation by Purchaser shall affect such representations or warranties or the right of Purchaser to rely upon them. This Agreement shall not constitute a novation, satisfaction and accord, cure, release, and/or satisfaction of the Agreement or other Documents, but shall constitute an amendment thereof.

17.8    **Further Assurances.** The Seller shall execute and deliver such other documents, certificates and/or instruments and take such other actions as Purchaser may reasonably request in order more effectively to consummate the transactions contemplated hereby.

IN WITNESS WHEREOF, the parties have caused this Ratification and Amendment Agreement to be executed under seal by their respective officers thereunder duly authorized, as of the date first above written.

**SELLER/DEBTOR:**                **SHORT BARK INDUSTRIES, INC.**

By: _____

Name: _____

Title: _____

**PURCHASER:**                   **LSQ FUNDING GROUP, LC**

By: _____

Name: _____

Title: _____

23

PHIL1 6330701v.2

## SCHEDULE A

## PERMITTED PRIORITY LIENS

[SELLER TO PROVIDE]

1

## **SCHEDULE B**

### **(SCHEDULE OF OBLIGATIONS)**

(Unpaid principal as of July [____], 2017)*

Purchases including Overadvances:               $[_____]

*Plus accrued and accruing interest, cost, fees, attorneys' fees and disbursements and other charges as well as adjustments, credits and charges as provided in the Documents.

2

## SCHEDULE C

### Schedule 8.9  (BUDGET)

Attached.

PHIL1 6330701v.2

## **SCHEDULE D**

### (**FORM OF INTERIM ORDER**)

Attached.

## <u>SCHEDULE E</u>

## **SPECIFIED EVENTS OF DEFAULT**

The "Specified Events of Default" shall mean each of the below-listed Events of Default which have occurred and are continuing

    i.    Seller's failure to make payments to Purchaser as required pursuant to <u>Section 12.1</u> of the Agreement;

    ii.    Seller's creation of an overadvance of the Seller's account in the amount of $3,376,177.37 as of October 21, 2016, plus interest at the Default Rate and attorneys' fees and costs incurred by Purchaser; and

    iii.    Seller's failure to turnover to Purchaser all funds received by Seller on Accounts purchased by Purchaser in violation of the Agreement.

    iv.    [others to be included].