# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Short Bark Industries, Inc., *et al.*,[1] | : | Case No. 17-11502 (KG) |
| Debtors. | : | (Jointly Administered) |
| | : | **Re: Docket No. 34** |

## OBJECTION OF ATLANTIC DIVING SUPPLY, INC. TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FACTORING AND OTHER FINANCIAL ACCOMMODATIONS, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Comes now Atlantic Diving Supply, Inc. ("**ADS**"), by and through its undersigned counsel, and sets forth its objections to *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Post-Petition Factoring and Other Financial Accommodations, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Superpriority Claims, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**Financing Motion**") [Docket No. 34], as follows:

### Background

1. On July 10, 2017 (the "**Petition Date**"), Short Bark Industries, Inc. ("**Short Bark**") and its affiliate, EXO SBI, LLC, (collectively, the "**Debtors**") filed voluntary petitions with the Court for relief under chapter 11 of the Bankruptcy Code.

---

[1] The Debtors in these jointly administered cases are Short Bark Industries, Inc. (Tax ID: 66-0655657) and EXO SBI, LLC (Tax ID: 46-5210695)).

1

2. On July 18, 2017 at approximately 12:30 P.M. ET, less than 24 hours prior to the time scheduled for the hearing on the Financing Motion, a creditors' committee was appointed in these cases.

3. ADS is a Virginia corporation with its principal place of business in Virginia Beach, Virginia. ADS specializes in equipment, procurement, and support solutions for the military, law enforcement, first responders, and the defense industry.

4. From March 11, 2015 and continuing through December 2, 2015, Short Bark placed orders with ADS for the Uniform Fabric, which ADS supplied and invoiced Short Bark $751,719.42, with a current outstanding account balance of $709,063.47. Accordingly, ADS is a significant creditor in these cases and has been appointed by the Office of the United States Trustee to serve as a member of the Creditors' Committee.

### The Debtors' Prior Motions and Supporting Papers

5. On the Petition Date, the Debtors filed, among other things, *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Scheduling a Final Hearing, and (III) Granting Related Relief* (the "**Cash Collateral Motion**") [Docket No. 9]. The Cash Collateral Motion was supported by *Declaration of Phil Williams in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**Williams Declaration**") [Docket No. 5].

6. Alleging a need for emergency interim relief, the Debtors filed *Debtors' Supplement to Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Scheduling a Final Hearing, and (III) Granting Related Relief (Re: D.I. 9)* (the "**Cash Collateral Motion Supplement**") [Docket No. 14] a day prior to the hearing on the requested relief. No proposed order was filed with the Cash Collateral Motion Supplement and no

fair opportunity was afforded creditors to address the terms presented to the Court at the "first day" hearings on July 13, 2017.

7.     On information and belief, the Court was presented with an *ex parte* account of the dire circumstances facing the Debtors that would result in an immediate shut down of the cases unless the order presented at the hearing (*Emergency Interim Order (I) Authorizing Debtors to Obtain Secured Postpetition Factoring and Financing, (II) Granting Liens, Security Interests and Superpriority Claim, (IV)*[sic] *Authorizing Use of Cash Collateral By the Debtor and Providing for Adequate Protection, (V)*[sic] *Modifying the Automatic Stay, (VI)*[sic] *Scheduling a Further Interim Hearing, and (VII)*[sic] *Granting Related Relief* (the "**Emergency Interim Order**") [Docket No. 21]) was entered.

8.     Contrary to the allegations in the Financing Motion that the Emergency Interim Order "simply provided the Debtors with the critical funding necessary for the first week of these cases" (Financing Motion, ¶ 10), the Emergency Interim Order went much further to award LSQ Funding Group, L.C. ("**LSQ**") numerous concessions that were neither adequately identified in the Cash Collateral Motion nor in the Cash Collateral Motion Supplement as required by the bankruptcy rules and practice. *See, e.g.*, Local Rule 4001-2.

### Objections to the Current Financing Motion

9.     The current Financing Motion continues the Debtors' prosecution of these cases under the thumb of LSQ by presenting a proposed financing that strips any protections that might be available to unsecured creditors and improperly places the entire control and future of these cases in the hands of LSQ.

10. The Financing Motion is references agreements and financing terms that are not included in the most recent filing and the terms of which could severely impact any potential recovery that otherwise might be available to unsecured creditors.

11. The Financing Motion incorporates by reference the Williams Declaration. The Williams Declaration was offered by the Debtors' CEO, Phil Williams ("**Mr. Williams**").

12. Among other things, Mr. Williams declared "under penalty of perjury" that "not all of the Debtors' receivables have been factored", "that the Debtors dispute that [the amount asserted by LSQ as being owed it] is the correct amount currently owed," and numerous facts that, if true, may establish significant avoidance actions against LSQ that would benefit the Debtors and the Debtors' estates.

13. Despite these serious allegations in the Williams Declaration, the Financing Motion presents a total capitulation by the Debtors to benefit of LSQ.

14. Based on the assertions in the Williams Declaration, there is no justification for the numerous protections demanded by LSQ for the use of cash collateral or the extension of a post-petition factoring arrangement with the Debtors.

15. The Financing Motion includes various stipulations by the Debtors that conflict with the assertions in the Williams Declaration and proposes to restrict the timeframe in which the Committee may investigate the validity and amount of claims and the perfection of liens asserted by LSQ. ADS submits that these concessions to LSQ are unjustified and objects to their inclusion in any financing arrangement that may be authorized by the Court.

16. Similarly, ADS objects to the proposed section 506(c) waiver, the concession of avoidance action recoveries to LSQ and the "roll-up" of LSQ's pre-petition claims as being unjustified.

17. Moreover, the Financing Motion states that the "Carve-Out" provided for the Debtors' professionals will not be available to the Committee's professionals. LSQ's unwillingness to afford treatment to Committee professionals that is similar to the treatment afforded to the Debtors' professionals strips the Committee of the opportunity to have a meaningful role in a successful prosecution of these cases for the benefit of its constituents, including ADS. Under such circumstances, it may make sense to simply convert the cases to cases under Chapter 7 at this point and have an independent trustee appointed who can properly investigate the acts alleged in the Williams Declaration and pursue potential recoveries that might benefit all creditors according to their respective interests.

18. ADS reserves the right to raise other and further objections at the hearing on the Financing Motion after undisclosed terms and exhibits are filed.

[**Intentionally left blank**]

WHEREFORE, ADS respectfully requests (a) that the Financing Motion be approved only if (i) appropriate notice is given to the Committee and creditors of the specific terms of the various agreements referenced in the Financing Motion, (ii) the terms of the proposed financing and use of cash collateral is fully disclosed in accordance with the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) that the Committee and creditors be afforded a reasonable opportunity under the attendant circumstances to respond to the terms proposed before any interim relief is granted, and (b) that ADS be granted such other and further relief as may be appropriate.

Date:  July 18, 2017
Wilmington, Delaware

        CIARDI CIARDI & ASTIN

        */s/ Joseph J. McMahon, Jr.*
        Daniel K. Astin (No. 4068)
        John D. McLaughlin, Jr. (No. 4123)
        Joseph McMahon, Jr. (No. 4819)
        1204 North King Street
        Wilmington, DE  19801
        Telephone: (302) 658-1100
        Facsimile: (302) 658-1300
        jmcmahon@ciardilaw.com

        -and-

        William H. Schwarzschild III, Esq.
        WILLIAMS MULLEN
        Williams Mullen Center
        200 South 10th Street
        Suite 1600
        Richmond, VA  23219
        Telephone:  (804) 420-6489
        Facsimile:  (804) 420-6507
        tschwarz@williamsmullen.com

        *Attorneys for Atlantic Diving Supply, Inc.*