# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SHORT BARK INDUSTRIES, INC.,[1] | ) Case No. 17-11502 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Related to Docket Nos. 9, 14, 23 and 34 |

## SECOND INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POSTPETITION FACTORING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e), (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIM, (IV) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTOR AND PROVIDING FOR ADEQUATE PROTECTION (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

Upon the motions and supplement [Docket Nos. 9, 14 and 34] (collectively, the "Motion") of EXO SBI, LLC ("EXO") and Short Bark Industries, Inc. ("Short Bark" and collectively with EXO, the "Debtors") in the above-captioned chapter 11 cases (the "Bankruptcy Cases"), under sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the corresponding Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") seeking, among other things:

(1)      authorization for Short Bark to enter into and obtain secured post-petition factoring, consisting of the purchase by LSQ Funding Group, LLC, as purchaser, (the

---

[1]      The Debtors in these jointly administered cases are Short Bark Industries, Inc. (Tax ID: 66-0655657) and EXO SBI, LLC (Tax ID: 46-5210695).

"Purchaser" or "LSQ") of certain of Short Bark's Accounts[2] up to an aggregate maximum amount (including pre-Petition Date purchases of Accounts) not to exceed $13.3 million including the Roll-Up (as defined below) of the outstanding balance of the Pre-Petition Obligations (as defined below) (the "DIP Financing") for the Interim Period (defined below).

(2)    authorization for Short Bark to execute the Ratification and Amendment Agreement, dated as of July 19, 2017, substantially in the form attached as Exhibit A to the Motion (including all amendments thereto, the "Ratification and Amendment Agreement" and collectively with any other related agreement, instrument or other document delivered or executed in connection with the Ratification and Amendment Agreement, including the "Budget" (as defined in the Ratification and Amendment Agreement and attached as Schedule C thereto) (collectively, the "DIP Documents"), by and among Short Bark, as seller and LSQ;

(3)    authorization for Short Bark to use "cash collateral" as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral") in which LSQ has an interest;

(4)    grant LSQ the Replacement Liens and Pre-Petition Superpriority Claims (each as defined below) to the extent of any Pre-Petition Diminution in Value (as defined below) of LSQ's interest in the Pre-Petition Collateral (as defined below) as adequate protection for the granting of the DIP Liens (as defined below) to LSQ, the use of Cash Collateral, and for the imposition of the automatic stay;

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms as used in the Ratification and Amendment Agreement.

(5)    authorization for Short Bark to execute and enter into the related DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(6)    Debtors' waiver of any right to surcharge against collateral, including the Collateral and Cash Collateral (as defined herein), under section 506(c) of the Bankruptcy Code;

(7)    modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this order (the "Second Interim Order");

(8)    schedule a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing; and

(9)    waive the fourteen (14) day stay provisions of Bankruptcy Rule 6004(h) and provide for immediate effectiveness of this Second Interim Order.

And the Court having entered the *Emergency Interim Order (I) Authorizing Debtors to Obtain Secured Postpetition Factoring and Financing (II) Granting Liens, Security Interests and Superpriority Claim (IV) Authorizing Use of Cash Collateral By the Debtor and Providing for Adequate Protection (V) Modifying the Automatic Stay (VI) Scheduling a Further Interim Hearing and (VII) Granting Related Relief* [Docket No. 23] (the "Interim Order") after conducting an interim hearing on the Motion on July 13, 2017 (the "Interim Hearing") and the Court having found that due and sufficient notice of the Motion and the second interim hearing on the Motion (the "Second Interim Hearing") was provided by the Debtors as set forth in paragraph 3 below, in accordance with the Bankruptcy Rules and the Local Rules; and the Court

- 3 -

having held the Second Interim Hearing on the Motion on July 19, 2017; and the Court having considered all the pleadings filed with this Court, including any objections to the Motion; and as further stated on the record at the Interim Hearing and Second Interim Hearing; and upon the record made by the Debtors at the Interim Hearing and Second Interim Hearing; and upon the entire record of the Bankruptcy Case; and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Disposition.*  The Motion is granted on an interim basis for the period beginning upon entry of this Second Interim Order through the Final Hearing (the "Interim Period") in accordance with the terms set forth herein.  Any objections to the relief sought in the Motion, and any reservations of rights with respect to such relief, that have not been previously resolved or withdrawn, are overruled on the merits.  This Second Interim Order shall be valid, binding and enforceable on all parties in interest and fully effective immediately upon entry.

2.    *Commencement of the Bankruptcy Case, Jurisdiction and Venue.*  On July 10, 2017 (the "Petition Date"), the Debtors each filed a petition with this Court commencing a case under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their businesses and managing their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  This Court has jurisdiction over the Bankruptcy Case and the Motion as a core proceeding, and over the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

3.    *Notice.*  Notice of the Second Interim Hearing and the proposed entry of this Second Interim Order has been provided to: (i) the twenty (20) largest unsecured creditors of the Debtor; (ii) the Office of the United States Trustee for the District of Delaware (the "U.S.

- 4 -

Trustee"); (iii) counsel to LSQ; (iv) all known parties asserting a lien against the Collateral; (v) any taxing authority having a claim against the Debtors; and (vi) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules and the Local Rules. The notice given by the Debtors of the Second Interim Hearing and the proposed entry of this Second Interim Order constitutes appropriate, due and sufficient notice thereof under the circumstances and complies with sections 102(1), 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 4001(b) and (c) and the Local Rules, and no other notice need be provided prior to entry of this Second Interim Order.

4.    *Findings Regarding the Financing.*

(a)    Good cause has been shown for the entry of this Second Interim Order.

(b)    Short Bark has a critical need to obtain the DIP Financing and use of the Collateral and Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its businesses, to maintain business relationships with vendors, suppliers and customers, and to make payroll. Access to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to Short Bark's restructuring efforts and the preservation and maintenance of the going concern value of Short Bark.

(c)    Short Bark is unable to obtain financing on more favorable terms from sources other than LSQ under the DIP Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Short Bark is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code without Short Bark granting to LSQ, subject to the Carve-Out (as defined herein) as provided for herein, the DIP Liens and the Superpriority Claims (each

-5-

as defined herein) under the terms and conditions set forth in this Second Interim Order and in the DIP Documents.  Short Bark is also unable to obtain credit for borrowed money without allowing LSQ to consummate a Roll-Up of the Pre-Petition Obligations into the DIP Financing by applying all collections received by the Debtors and advances to Short Bark under the DIP Financing in the following order: (x) first, (subject to entry of the Final Order) to reduce the remaining outstanding obligations pursuant to the Pre-Petition Obligations (the "Roll-Up"), and (y) second, to reduce the DIP Obligations and otherwise deeming the Pre-Petition Obligations part of the DIP Obligations, which arrangement shall be administered pursuant to the terms and conditions of this Second Interim Order and the Ratification and Amendment Agreement.

(d)    Based on the record presented to the Court at the Interim Hearing and Second Interim Hearing, the terms of the DIP Financing and the use of the Collateral and Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)    The DIP Financing and the use of Collateral have been negotiated in good faith and at arm's length among the Debtors, and LSQ, and all of Short Bark's obligations and indebtedness arising under, in respect of or in connection with the DIP Financing and the DIP Documents, including without limitation, (i) all loans incurred by or made to Short Bark under the Ratification and Amendment Agreement and (ii) any other "Obligations" (as defined in the Ratification and Amendment Agreement), (collectively, the "DIP Obligations"), shall be deemed to have been extended by LSQ and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the

- 6 -

Bankruptcy Code in the event that this Second Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. The Roll-Up and any compensation or payment that may be received by LSQ incremental to what would have been received had such Roll-Up not occurred, constitute compensation for, in consideration for, and solely on account of, the agreement of LSQ to make available the DIP Financing and not as payments under, adequate protection for, or otherwise on account of, the Pre-Petition Obligations.

(f)  The Debtors have requested entry of this Second Interim Order pursuant to Bankruptcy Rules 4001(c), 4001(d) and the Local Rules.  Short Bark requires access to the DIP Financing provided by the DIP Financing and use of the Collateral and Cash Collateral in order to continue its operations.  Consummation of the DIP Financing and authorization of the use of the Collateral and Cash Collateral in accordance with this Second Interim Order and the DIP Documents is therefore in the best interests of the Debtors' estates.

5.  *Debtors Acknowledgements, Agreements and Stipulations.*  Subject to the Challenge Period set forth in paragraph 18 of this Second Interim Order, the Debtors (on behalf of themselves and their estates) admit, stipulate, acknowledge and agree that (collectively, the "Debtors' Stipulations"):

(a)  Pursuant to the Pre-Petition Documents, Short Bark was indebted to LSQ in the approximate principal amount of $9,853,433  plus accrued and accruing interest, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, (collectively the "Pre-Petition Obligations").

(b)  To secure the Pre-Petition Obligations, Short Bark granted security interests and liens (the "Pre-Petition Liens") to LSQ upon all of Short Bark's personal property and fixtures, and proceeds thereof, including without limitation: accounts; chattel paper;

- 7 -

inventory; equipment; instruments, including promissory notes; investment property; documents; deposit accounts; letter of credit rights; general intangibles; and supporting obligations (collectively, the "Pre-Petition Collateral"), with priority over all other liens except any liens otherwise permitted by the Pre-Petition Documents and all other liens that were in fact senior in priority to the Pre-Petition Liens as of the Petition Date, if any (which were valid, properly perfected, unavoidable, senior to the Pre-Petition Liens, and not subject to a subordination agreement, they are referred to herein as the "Permitted Prior Liens").  To avoid any doubt, the term "Permitted Prior Liens" does not include, and specifically excludes, the liens securing the Pre-Petition Obligations, which Pre-Petition Liens and claims are to be subordinated to, and junior to, the DIP Liens.

(c)     As of the Petition Date (i) the Pre-Petition Liens were valid, binding, enforceable, perfected first-priority liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and subject only to any Permitted Prior Liens, (ii) the Pre-Petition Obligations constituted legal, valid and binding obligations of Short Bark, enforceable in accordance with the terms of the Pre-Petition Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists, and no portion of the Pre-Petition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Obligations constituted allowable secured claims, and (b) on the date that this Interim Order was entered, the Debtors have waived, discharged and released LSQ, together with their affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to any of the Pre-Petition Obligations, (y) to challenge or object to

- 8 -

the security for the Pre-Petition Obligations, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Documents or otherwise.  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Documents or the Pre-Petition Liens, and/or security interests in the Pre-Petition Collateral, or any claim of LSQ pursuant to the Pre-Petition Documents.

(d)     In entering into the DIP Documents, and as consideration therefor, the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full in cash and the DIP Documents are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the Pre-Petition Liens and the security interests and DIP Liens provided to LSQ under this Second Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

(e)     LSQ has a security interest and lien in Cash Collateral, including on all amounts on deposit in Debtors' banking, checking, or other deposit accounts and all proceeds of Pre-Petition Collateral to secure the other deposit accounts and all proceeds of Pre-Petition Collateral to secure the Pre-Petition Obligations, to the same extent and order of priority as that which was held by each such party pre-petition.

6.     *Authorization of the DIP Financing and the DIP Documents and Use of Cash Collateral.*

(a)     The DIP Documents are approved, and Short Bark is hereby authorized to sell to LSQ all Accounts of Short Bark and incur indebtedness (including pre-Petition Date purchases of Accounts and subject to entry of the Final Order the Roll-Up) and use Cash

Collateral in the aggregate maximum amount not to exceed $1,867,000 on an interim basis pending a Final Hearing on the Motion, plus interest, fees and other expenses and amounts provided for in the DIP Documents, in accordance with the terms of the DIP Documents, which only shall be used for the purposes permitted under the DIP Documents and in accordance with the Budget, including (i) to provide working capital needs and general corporate purposes of Short Bark, and (ii) to make payments or fund amounts otherwise permitted in this Second Interim Order and the DIP Documents.

(b)    In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Debtors' performance of its obligations under the DIP Documents, including, without limitation:

(i)    the execution, delivery and performance of the Ratification and Amendment Agreement and the other DIP Documents, any security documents contemplated thereby and any exhibits attached thereto;

(ii)    the non-refundable payment to LSQ of the fees referred to in the Ratification and Amendment Agreement, and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by LSQ as provided for in the DIP Documents;

(iii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents for, among other things, the purpose of adding additional entities as LSQ and reallocating the

- 10 -

commitments for the DIP Financing among LSQ, in each case in such form as LSQ may agree, it being understood that no further approval of the Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents or the DIP Obligations that do not materially and adversely impair the rights of Short Bark, its estate or other parties in interest (other than the parties to the Ratification and Amendment Agreement) thereunder; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    The DIP Documents constitute valid and binding obligations of the Debtors and are enforceable against the Debtors in accordance with the terms thereof.   No obligation, payment, transfer or grant of security under the DIP Documents or this Second Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.    *Accounts.*

(a)    The Debtors' existing cash management system and all bank accounts and investment accounts established in connection therewith and with the DIP Financing in accordance with the Ratification and Amendment Agreement (the "Cash Management System") shall be used for the purposes and on the terms and conditions set forth in the Ratification and Amendment Agreement and the other DIP Documents. The Debtors are authorized and directed to establish and maintain control agreements on any such bank accounts used as part of the Cash Management System (the "Accounts") as may be required by the Ratification and Amendment

- 11 -

Agreement, the other DIP Documents, or as directed by LSQ, and the banks at which such accounts are maintained are authorized to execute and deliver such control agreements as required by this Second Interim Order and the Ratification and Amendment Agreement. The control agreements shall confirm the first priority perfected lien on the Accounts granted pursuant this Second Interim Order in favor of LSQ.

(b)    Each depository institution at which the Debtors maintain a depository account shall immediately share dominion and control with LSQ over each such depository account of the Debtors that was subject to a deposit account control agreement in favor of any such party as of the Petition Date, and, as of the date of this Second Interim Order and hereafter, such deposit account control agreements shall be additionally enforceable by LSQ against, and binding upon, each depository institution party thereto until the DIP Obligations have been paid in full in cash and the Ratification and Amendment Agreement shall have been terminated, after which such deposit account control agreements shall again be solely enforceable by the depository institution that is a party thereto.

8.    *Adequate Protection for LSQ.* As adequate protection for the interest of LSQ in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, Short Bark's use of the Collateral and Cash Collateral and other decline in value arising out of the automatic stay or Short Bark's use, sale, depreciation, or disposition of the Pre-Petition Collateral ("Pre-Petition Diminution in Value"), LSQ shall receive adequate protection as follows:

(a)    Pre-Petition Replacement Liens.  Solely to the extent of the Pre-Petition Diminution in Value of the interests of LSQ in the Pre-Petition Collateral, LSQ shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d)

- 12 -

of the Bankruptcy Code additional and replacement security interests and Liens in the DIP Collateral (the "Pre-Petition Replacement Liens"), which shall be junior only to the DIP Liens, Permitted Prior Liens, if any, and the Carve-Out as provided herein.

   (b) Pre-Petition Superpriority Claim. To the extent of the Pre-Petition Diminution in Value of LSQ's interest in the Pre-Petition Collateral, LSQ shall have an allowed superpriority administrative expense claim pursuant to Bankruptcy Code section 507(b) (the "Pre-Petition Superpriority Claim") which shall have priority (except with respect to the DIP Liens, the DIP Superpriority Claim, and the Carve-Out) over any other claims under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114 of the Bankruptcy Code and, if approved in the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses of claims may become secured by a judgment or other non-consensual lien, levy or attachment.

   9. *DIP Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy

- 13 -

Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (the "DIP Superpriority Claims"), which allowed DIP Superpriority Claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve-Out to the extent specifically provided for herein. (The Pre-Petition Superpriority Claim and DIP Superpriority Claim are collectively referred to as, the "Superpriority Claims")

10.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Second Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by LSQ of, or over, any Collateral, LSQ shall receive, and is granted by Short Bark, for its own benefit, a fully perfected pledge of all equity, and a fully perfected security interest in all prepetition and post-petition assets of Short Bark (including the Accounts), all property identified in clauses (a), (b) and (c) below, and in each case, all proceeds resulting therefrom (such property being collectively referred to as the "DIP Collateral"), subject only to the Permitted Prior Liens, if any, and payment of the Carve-Out as set forth in this Second Interim Order and the Ratification and Amendment Agreement (all such liens and security interests granted to LSQ, for its benefit, pursuant to this Second Interim Order and the DIP Documents, the "DIP Liens"):

(a)    First Lien on Cash Balances and Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired, that, on or as of the

- 14 -

Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "Unencumbered Property"), including without limitation, all inter-company notes or inter-company receivables due to the Debtors, any and all cash and cash collateral of the Debtors and any investment of such cash and cash collateral, inventory, any accounts receivable, any other right to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of all subsidiaries and the proceeds of all the foregoing.    Subject to entry of a Final Order, Unencumbered Property shall also include the Debtors' claims and causes of action under sections 502(d), 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code and the proceeds thereof and property received thereby whether by judgment, settlement or otherwise (collectively, "Avoidance Actions"); provided, however, that (1) upon satisfaction in full in cash of the DIP Obligations, the DIP Liens on the Avoidance Actions and the proceeds and property recovered thereunder shall automatically be released, and (2) the proceeds and property recovered or the subject of Avoidance Actions shall only be used to pay or otherwise satisfy any DIP Liens to the extent necessary after commercially reasonable efforts have been undertaken by LSQ to pay or otherwise satisfy any DIP Liens from the other Collateral.

(b)    Liens Priming the Prepetition Liens and Other Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, subject only to the Permitted Prior Liens, if any, and payment of the Carve-Out, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, any and all cash and Cash Collateral of the Debtors(whether

- 15 -

maintained with LSQ or otherwise) and any investment of such cash and cash collateral, inventory, any accounts receivable, any other right to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired.

(c)    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 10, as to which the liens and security interests in favor of LSQ, for its benefit, will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which liens in favor of LSQ are immediately junior to such valid, perfected and unavoidable liens ("Third Party Liens").

(d)    Liens Senior to Certain Other Liens.  The DIP Liens shall not be (a) subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (b) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

- 16 -

11.    *Protection of LSQ's Rights.*

(a)    All Collateral shall be free and clear of all liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under this Second Interim Order (including Third Party Liens) and the DIP Documents.

(b)    So long as there are any DIP Obligations outstanding (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid) under the Ratification and Amendment Agreement, LSQ may file any financing statement or other document to perfect the liens granted pursuant to this Second Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date.

(c)    Notwithstanding section 362 of the Bankruptcy Code, without further order or application to the Court, the automatic stay is hereby vacated and modified to the extent necessary to permit LSQ to exercise, upon the occurrence and during the continuation of any Event of Default, all rights and remedies provided for in this Second Interim Order, the DIP Documents or applicable law, including, without limitation, upon three (3) business days' written notice to the Debtors, the official committee of unsecured creditors appointed in these cases (the "Committee") and the U.S. Trustee ~~take~~ the taking of one or more of the following actions, at the same or different times:  (A) reduce the amount of, suspend or terminate any outstanding Commitments; (B) terminate the Financing; (C) charge default interest on the DIP Loans; (D) declare all or any portion of the DIP Loans to be due and payable; (E) subject to the Carve-Out, realize on any or all Collateral and exercise any and all remedies under the DIP Documents, any applicable control agreement and applicable law, including the right to set off or seize amounts in accounts, including the Accounts, maintained with or under control of LSQ.

- 17 -

(d)    In any hearing before this Court within such three (3) business day period regarding any exercise of rights or remedies, the only issue that may be raised by the Debtor, Committee or any party in interest shall be whether, in fact, an Event of Default has occurred. The Debtors hereby waive their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of LSQ set forth in this Second Interim Order or the DIP Documents. Subject to entry of the Final Order, in no event shall LSQ be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. The delay or failure of LSQ to seek relief or otherwise exercise or enforce its rights and remedies under the DIP Documents or this Second Interim Order shall not constitute a waiver of LSQ's rights or remedies hereunder, thereunder or otherwise.

(e)    The Debtors shall pay, no later than ten (10) days following receipt by the Debtors of any invoice (which may be provided in summary fashion or redacted to protect privilege) therefore, with a copy to the Committee and United States Trustee: the reasonable and documented fees and out-of-pocket expenses for the professionals of LSQ; provided that no payment shall be made by the Debtors if an objection is made by the Debtors, the Committee or the United States Trustee within such ten (10) day period, except to the extent such fees and expenses are not subject to the objection, unless consensually resolved by the affected professional and objecting party or approved by the Court. The fees and expenses paid hereunder shall not otherwise be subject to separate approval by the Court or to the United States Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. All such unpaid fees, costs, expenses and other amounts owed or payable shall be secured by the Collateral and afforded all of the

priorities and protections afforded to the DIP Obligations under this Second Interim Order and the DIP Documents.

      12.    *Carve-Out.*

      (a)    A "Carve-Out Event" shall mean an "Event of Default" (as defined in the Ratification and Amendment Agreement) or an event which with the giving of notice or lapse of time or both would constitute an Event of Default, (x) written notice of which has been given by LSQ to the Debtors or (y) in respect of which the Debtor has knowledge of such Event of Default and fails to provide written notice to LSQ within two (2) business days of obtaining such knowledge; provided that no Carve-Out Event shall be deemed to have occurred for purposes of this Second Interim Order if any such Event of Default is subsequently waived by LSQ.

      (b)    (i) LSQ's liens on the Collateral and all other claims and liens thereon, including any Superpriority Claims, shall be subject to a carve out (the "Carve-Out") in an amount not to exceed: (A) all accrued but unpaid professional fees and disbursements of professional persons retained by the Debtors and the Committee by order of this Court and payable under sections 328, 330 and/or 331 of the Bankruptcy Code (collectively, the "Professional Expenses") incurred by the Debtors or Trustee prior to the occurrence of a Carve-Out Event (the "Pre-Carve Out Amount"), provided that such Pre-Carve Out Amount shall not exceed the amounts set forth in the Budget for such items through the occurrence of such Carve-Out Event, plus (B) fees incurred and payable to the clerk of the Bankruptcy Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930, to the extent such fees were incurred prior to delivery by LSQ to the Debtors of a notice of an Event of Default.  In no event shall any of the Carve-Out be used to pay any fees or expenses of any person retained in a chapter 7 case under sections 326, 327 or 328 of the Bankruptcy Code.  Notwithstanding the foregoing, no portion of the

- 19 -

Carve-Out and no portion of any amounts approved for payment prior to an Event of Default shall be utilized in a manner prohibited under the Ratification and Amendment Agreement and paragraph 12 of this Second Interim Order.

(c)     No portion of the DIP Financing, the Collateral, Cash Collateral, or the Carve-Out shall be used or be available to pay any fees, disbursements, costs or expenses incurred by any party in connection with: (i) challenging the amount, extent, validity, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to, the DIP Obligations, or the security interests and liens of LSQ in respect thereof; or (ii) any investigation (including discovery proceedings), assertion, initiation or prosecution of any other claims, causes of action, adversary proceedings or other litigation against LSQ.  Provided, however, that, such exclusion does not encompass any investigative work, at an aggregate expense not to exceed $10,000, conducted by the professionals for the Committee, prior to bringing any action relating to the foregoing.

13.     *Limitation on Charging Expenses Against Collateral*.  Subject to entry of the Final Order, except to the extent of the Carve-Out, no expenses of administration of the Bankruptcy Case or any future proceeding that may result therefrom, including conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral under section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of LSQ, and no such consent shall be implied from any other action, inaction, or acquiescence by LSQ.

- 20 -

14.    *Perfection of DIP Liens.*

(a)    Subject to the provisions of paragraph 11 above, LSQ is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action (including taking or releasing any liens or pledges granted by this Second Interim Order) in order to validate and perfect the DIP Liens granted to it hereunder.    Whether or not LSQ shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments that may be otherwise required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens, and, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, as of the date hereof.    The failure of the Debtors to execute any documentation relating to the enforceability, priority or perfection of the DIP Liens shall in no way affect their validity, perfection or priority.

(b)    If LSQ, in its sole discretion, elects to file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise to confirm perfection of the DIP Liens, the Debtors shall cooperate with and assist in such process, the stay imposed under section 362 of the Bankruptcy Code is hereby lifted to permit the filing and recording of a certified copy of this Second Interim Order or any such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, and all such documents shall be deemed to have been filed and recorded at the time

- 21 -

of and on the date of the entry of this Second Interim Order. Upon the request of LSQ, without any further consent of any party, the Debtor is authorized and directed to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable LSQ to further validate, perfect, preserve and enforce the DIP Liens.

(c)     A certified copy of this Second Interim Order may, in the discretion of LSQ, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Second Interim Order for filing and recording.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for the Debtors to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting the DIP Liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by the Debtors, in favor of LSQ in accordance with the terms of the Ratification and Amendment Agreement or this Second Interim Order. Notwithstanding anything to the contrary herein and for the avoidance of doubt, the liens granted in this Second Interim Order with respect to the Collateral shall include the proceeds of leased real property which are not direct liens on the Debtors' leases of real property.

15.     *Preservation of Rights Granted Under the Second Interim Order.*

(a)    Unless all DIP Obligations shall have been indefeasibly paid in full, it shall constitute an Event of Default and terminate the right of Short Bark to use the Financing and/or any cash provided by the DIP Loans if there is entered (i) any modifications or extensions of this Second Interim Order without the prior written consent of LSQ, and no such consent shall be implied by any other action, inaction or acquiescence by LSQ, or (ii) an order converting or dismissing the Bankruptcy Case.  If an order dismissing the Bankruptcy Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (A) the DIP Liens granted to LSQ pursuant to this Second Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Second Interim Order until all DIP Obligations shall have been paid and satisfied in full (and that such DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), (B) the other rights under this Second Interim Order shall not be affected and (C) this Court shall retain jurisdiction, notwithstanding such dismissal to the fullest extent permitted by law, for the purposes of enforcing the liens and security interests referred to in this paragraph.

(b)    If any or all of the provisions of this Second Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity of any DIP Obligations incurred prior to the actual receipt of written notice by LSQ, of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien, or the priority thereof authorized or created pursuant to the Ratification and Amendment Agreement or this Second Interim Order with respect to any DIP Obligations.  Notwithstanding any such reversal, modification, vacatur or stay, any use of cash Collateral, or DIP Obligations incurred by the Debtors to LSQ before the actual receipt of written

- 23 -

notice by LSQ of the effective date of such reversal, modification, stay or vacatur shall be governed in all respects by the original provisions of this Second Interim Order, and LSQ shall be entitled to all the rights, remedies, privileges and benefits granted in sections 363(m) and 364(e) of the Bankruptcy Code, this Second Interim Order and pursuant to the DIP Documents with respect to all uses of cash Collateral and DIP Obligations.

(c)    Except as expressly provided in this Second Interim Order or in the DIP Documents, the DIP Liens and all other rights and remedies of LSQ granted by the provisions of this Second Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Bankruptcy Case to a case under chapter 7 or dismissing the Bankruptcy Case, or (ii) the entry of an order confirming a chapter 11 plan in the Bankruptcy Case. The DIP Liens and all other rights and remedies of LSQ granted by the provisions of this Second Interim Order and the DIP Documents shall continue in full force and effect in this Bankruptcy Case or in any succeeding chapter 7 case under the Bankruptcy Code until the DIP Obligations are indefeasibly paid in full in cash. The Debtors shall not propose or support any plan of reorganization or liquidation or entry of any confirmation order that is not conditioned upon the indefeasible payment in full in cash of all DIP Obligations on or prior to the earlier of (i) the effective date of such plan of reorganization or liquidation (unless LSQ shall have consented in writing to such plan) and (ii) an Event of Default.

16.    *LSQ's Right to Credit Bid.*  LSQ shall have the right to "credit bid" the full amount of its claims, including without limitation, claims on account of outstanding principal, interest and any other amounts due and owing under the DIP Documents, during any sale of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the

Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

17.      *Limitation on Use of DIP Financing Proceeds and Collateral.* The Debtors shall use the DIP Financing and the Collateral solely as provided in DIP Documents and this Second Interim Order. The Debtors have released and waived any and all claims and causes of action against LSQ, and its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, each in their capacities as such, related to the Financing, this Second Interim Order or the negotiation of the terms thereof. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings under the Ratification and Amendment Agreement, Collateral, or the Carve-Out may be used to:  (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this Second Interim Order, the DIP Documents, or the liens or claims granted under this Second Interim Order or the DIP Documents;  (b) assert any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses against LSQ, or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors;  (c) oppose LSQ's assertion, enforcement or realization on the Collateral or cash collateral in accordance with the DIP Documents or this Second Interim Order;  (d) seek to modify any of the rights granted to LSQ hereunder or under the DIP Documents without such parties' prior written consent; or  (e) unless such payments are approved by an order of this Court and otherwise permitted by the Ratification and Amendment Agreement and the Budget, pay any amount on account of any claims arising prior to the Petition Date.

18.      *Reservation of Certain Third Party Rights and Bar of Challenges and Claims.* Nothing in this Second Interim Order or the Ratification and Amendment Agreement, including,

- 25 -

without limitation, the Debtor's Stipulations, shall prejudice whatever rights that the Committee or any other party in interest with requisite standing (other than the Debtors) may have (a) to file a contested matter or an adversary proceeding or otherwise to object to or challenge the findings herein, including, but not limited to, (i) the validity, extent, perfection, enforceability or priority of the mortgage, security interests and Pre-Petition Liens of LSQ in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Obligations, or (b) to bring suit or otherwise assert any claims or causes of action against LSQ in connection with or related to the Pre-Petition Documents, or the actions or inactions of LSQ arising out of or related to the Pre-Petition Documents; provided, however, that, unless the Committee or any other party in interest with requisite standing commences a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against LSQ in the nature of a setoff, counterclaim or defense to the Pre-Petition Obligations (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against LSQ), within 60 days of the appointment of the Committee (the "Challenge Period" and in the event that no contested matter, adversary proceeding or other objection or challenge is raised during the Challenge Period, the next calendar day after the next calendar day after the Challenge Period termination shall be referred to as, the "Challenge Period Termination Date"), upon the Challenge Period Termination Date, (i) any and all such contested matters, adversary proceedings and other objections and challenges by any party (including, without limitation, all creditors, official creditors' committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, receivers, administrators, examiners with expanded powers, responsible officers, other estate representatives appointed in this Case or any Successor Case or in any jurisdiction, and all

- 26 -

other parties in interest) shall be deemed to be forever waived and barred, (ii) the Pre-Petition Obligations shall be deemed to be allowed in full and shall be deemed to be allowed as fully secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with these Cases and any Successor Cases, (iii) the Liens in favor of LSQ shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected security interests and Liens, not subject to recharacterization, subordination or otherwise avoidable, (iv) the Debtors' Stipulations shall be binding on all parties (including, without limitation, all creditors, the Committee and any other official creditors' committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, receivers, administrators, examiners with expanded powers, responsible officers, other estate representatives appointed in this Case or in any Successor Case or in any jurisdiction, and all other parties in interest).  To the extent any such contested matter, adversary proceeding or other objection or challenge is filed, LSQ shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Pre-Petition Obligations, in each case, to the extent allowable under section 506(b) of the Bankruptcy Code.

19.    *Modifications of, and Waivers under, the DIP Documents.*  The Debtors and LSQ, after consultation with the professionals for the Committee, are hereby authorized to implement, in accordance with the terms of the DIP Documents, any non-material modifications (including without limitation, any change in the number or composition of LSQ) of the DIP Documents without further notice, motion or application to, order of, or hearing before, this Court.  Material modifications or amendments to the DIP Documents shall be filed with this Court and only permitted upon order of this Court, which may be obtained upon certification of counsel, provided 10 days prior written notice of such material change(s) and of the opportunity to object

- 27 -

thereto has been given to the U.S. Trustee.  The Debtors and LSQ shall be permitted to enter into waivers under the DIP Documents in accordance with the terms thereof without further order of this Court.

20.    *Second Interim Order Governs.*  In the event of any inconsistency between the provisions of this Second Interim Order and the DIP Documents, the provisions of this Second Interim Order shall govern.

21.    *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Second Interim Order, including all findings herein, shall be binding upon all parties in interest in this Bankruptcy Cases, including, without limitation, LSQ, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtors) and shall inure to the benefit of LSQ and the Debtors and their respective successors and assigns; provided, however, that LSQ shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtors.  In determining to make any loan under the Ratification and Amendment Agreement or in exercising any rights or remedies as and when permitted pursuant to this Second Interim Order or the DIP Documents, LSQ shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

22.    *Effectiveness.*  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule or Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Second Interim Order shall be immediately effective and enforceable upon

- 28 -

its entry and there shall be no stay of execution of effectiveness of this Second Interim Order as provided in such Rules.

23

22.     The ~~Final~~ Hearing to consider entry of ~~the Final~~ a further interim Order and ~~final~~ approval of the Motion is scheduled for **July 31**, 2017 at 10:00 a.m. at the United States Bankruptcy Court for the District of Delaware.  If no objections to the relief sought in the ~~Final~~ Hearing are filed and served in accordance with this Second Interim Order, no ~~Final~~ such Hearing may be held, and a separate ~~Final~~ Order may be presented by the Debtor and entered by this Court.

(b)     On or before **July 20**, 2017, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Second Interim Order and of the ~~Final~~ Further interim Hearing (the "~~Final~~ Further Interim Hearing Notice"), together with copies of this Second Interim Order, the proposed ~~Final~~ Further interim Order and the Motion, on: (i) the parties having been given notice of the Interim Hearing; and (ii) any party that has filed prior to such date a request for notices with this Court.  The ~~Final~~ Further Interim Hearing Notice shall state that any party in interest objecting to the entry of the proposed ~~Final~~ Further interim Order shall file written objections with the Clerk of this Court no later than **July 27**, 2017 which objections shall be served so that the same are received on or before such date by: (i) counsel for the Debtors; (ii) counsel for the Committee, if any; and (iii) counsel for LSQ, and shall be filed with the Clerk of this Court, in each case to allow actual receipt of the foregoing no later than **July 27**, 2017, at 4:00 p.m. prevailing Eastern time.  Notwithstanding the terms of this Second Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to any of the terms in this Second Interim Order, subject to the protections under section 364(e) of the Bankruptcy Code and the rights of LSQ to terminate the Ratification and Amendment Agreement if such Final Order is not acceptable to them.  In the event this Court modifies any of

- 29 -

the provisions of this Second Interim Order or the DIP Financing Agreements following such further hearing, such modifications shall not affect the rights and priorities of LSQ pursuant to this Second Interim Order with respect to the Collateral, and any portion of the DIP Obligations which arises or is incurred, advanced or paid prior to such modifications (or otherwise arising prior to such modifications), and this Second Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing. *Further Interim*

        (c)    This Court has and will retain jurisdiction to enforce this Second Interim Order according to its terms.

Dated: July **19**, 2017

 

HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE