## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SHORT BARK INDUSTRIES, INC., et al.,[1] | Case No. 17-11502 (KG) |
| Debtors. | Jointly Administered |
| | **Proposed Hearing Date: July 31, 2017 at 10:00 a.m. (ET)**<br>**Proposed Objection Deadline: July 27, 2017 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR ORDERS (I)(A) APPROVING BIDDING PROCEDURES AND AUCTION AND (B) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

Short Bark Industries, Inc. ("**SBI**") and EXO SBI, LLC ("EXO," and together with SBI, the "**Debtors**"), hereby submit this motion (this "**Motion**") for entry of orders (I)(A) approving bidding procedures and related auction and (B) scheduling a sale hearing and approving notice thereof (the "**Bidding Procedures Order**"); (II) authorizing the sale of substantially all of the Debtors' assets free and clear of all liens, claims, encumbrances, and other interests; (III) authorizing the assumption and assignment of certain executory contracts and unexpired leases and establishing procedures to determine cure amounts and establishing deadlines for objections with respect thereto; and (IV) granting related relief (the "**Approval Order**").  In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court

---

[1]     The Debtors in these jointly administered cases are Short Bark Industries, Inc. (Tax ID: 66-0655657) and EXO SBI, LLC (Tax ID: 46-5210695)).

for the District of Delaware dated as of February 29, 2012.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  The statutory predicates for the relief requested herein are sections 105(a), 363, 364, 365, 503, 507 and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 6004-1.

**Background**

2.    On July 10, 2017 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.   A Committee of Unsecured Creditors (the "**Committee**") was appointed on July 18, 2018 [D.I. 41].

3.    Concurrently herewith, the Debtors are filing their *Motion to Shorten Notice with Respect to Debtors' Motion for Orders (I)(A) Approving Bidding Procedures and Auction and (B) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (III) Authorizing the Assumption and Assignment of Certain*

*Executory Contracts; and (IV) Granting Related Relief* (the "**Motion to Shorten Notice**") seeking to shorten the notice period for a hearing on this Motion.

## Facts Specific to the Relief Requested

4.      SBI provides high quality body armor, apparel, and accessories for military, government, and police force use. SBI is the leading company that offers concealed, patented, customized body protection.  SBI's primary customer is the United States Government (the "**Government**").  SBI manufactures apparel products such as combat shirts, combat jackets, and other combat uniforms and garments, as well as associated items such as modular lightweight load-carry equipment rucksacks and assault packs. SBI also manufactures uniforms for Superior Uniform Group, who ultimately provides uniforms to Walmart.

5.      Prior to and on the Petition Date, the Debtors were exploring options to sell their business. The Debtors hired SSG Advisors, LLC ("**SSG**") and Young America Capital, LLC ("**YAC**" and collectively with SSG, the "**Advisors**") as their investment bankers to market the Debtors' assets and business with the hope that value-maximizing transaction could be achieved promptly.

6.      As further background, prior to the Petition Date, the Debtors retained the Advisors in an effort to determine their financial possibilities. On December 12, 2016, SSG was retained to assist YAC in a marketing process for SBI's assets, which began in March 2016. The Advisors worked together to determine a plan of action based upon the Debtors' cash position and other factors.

7.      From March 2016 through February 2017, the Advisors contacted over two hundred (200) parties, including lenders and strategic buyers, in an effort to market the Debtors as a ripe investment.  From these contacts, approximately fifty (50) confidentiality

agreements were executed, and multiple offers were made to purchase LSQ's position on the Debtors' assets.

8.    During this period, there were a number of potential transactions with certain parties to purchase either the assets of Debtor SBI, or would purchase the debt position of LSQ.  For various reasons, those transactions were not consummated.

**Procedural Status**

9.    The Debtors filed these chapter 11 cases to continue the operations of their business, to avoid any interruption in the manufacturing process, and to ensure a robust action process.  Any interruption would very likely have destroyed the value of the businesses.

10.    On July 13, 2017, the Court held hearings on the Debtors' first day motions (the "**First Day Hearings**"). At the First Day Hearings, it became clear that the Debtors and the debtor-in-possession financing source, LSQ Funding Group, LLC ("**LSQ**" ) all supported a potential sale to an interested purchaser.  The Debtors believe that the best way of maximizing the value of the estates' assets is to conduct a sale and auction process as described more fully herein, attempt to maximize the potential recovery to the approximately fifty (50) general unsecured creditors, and allow the businesses to operate in the ordinary course until the sale occurs.

11.    It is essential the Debtors consummate a value-maximizing sale of their assets expeditiously.  Any delays will lead to unnecessary expense that will, in turn, frustrate the Debtors' attempt to maximize value.  If there is a delay, and LSQ is no longer ready, willing, and/or able to finance the Debtors' operations, then the Debtors will be unable to meet payroll and other obligations, and it is highly likely that the Debtors' business will shut down, over 500 employees will be terminated and the Debtors' assets will be liquidated piecemeal.  However,

approving the relief requested herein near the outset of these chapter 11 cases will maximize value for the Debtors' estates, minimize the administrative expenses incurred in the cases and save jobs.

### Summary of Relief Requested

12.     The Debtors believe that the solicitation of bids and a sale of substantially all of their assets on the timeline proposed herein allows the Debtors to maximize value for all stakeholders while minimizing administrative expenses.  During this process, the Debtors will continue to engage with interested parties, and attempt to attract additional interested parties that will participate in a competitive auction process contemplated by the Bidding Procedures (defined below).  The Debtors propose that the hearing to approve the Bidding Procedures be held on **July 31, 2017** at **10:00 a.m.**  (the "**Bid Procedures Hearing**"), with objections to the Bidding Procedures, if any, to be filed on or before **July 27, 2017 at 4:00 p.m.** prevailing Eastern time (the "**Bid Procedures Objection Deadline**").  The Debtors propose that the bid deadline be set for **August 25, 2017 at 5:00 p.m.** prevailing Eastern time (the "**Bid Deadline**"), and that the auction of the Debtors' assets (the "**Auction**"), if required, be scheduled for **August 29, 2017 at 10:00 a.m.** prevailing Eastern time.  The Debtors propose that the Court hold the hearing to approve the sale and enter the Approval Order (the "**Sale Hearing**") on **August 30, 2017 at [      ]** prevailing Eastern time, with objections to the relief requested in the Approval Order (other than with respect to the conduct of the Auction), if any, to be filed on or before **August 25, 2017 at 4:00 p.m.** prevailing Eastern time and objections to the conduct of the Auction, if any, to be filed prior to the commencement of the Sale Hearing.

13.     The Debtors seek authority to select, with the consent of LSQ, a stalking horse or lead bidder (a "**Stalking Horse Bidder**"), and to provide the Stalking Horse Bidder with

certain customary bid protections (the "**Bidding Protections**") including a breakup fee and expense reimbursement.

14.    To the extent the Debtors may identify a Stalking Horse Bidder prior to the Bid Procedures Hearing, the Debtors propose to supplement this Motion (the "**Supplement**") and make the disclosures required by Local Rule 6004-1 related to the Stalking Horse Bidder and its bid for the assets, and seek authority to enter into the same.  In addition, to the extent the Stalking Horse Bidder requests additional bidding protections, including a breakup fee and expense reimbursement, the Debtors will disclose those additional bidding protections in the Supplement and seek approval of same at the hearing on the Motion.

## **Relief Requested**

15.    By this Motion, the Debtors seek the entry of two orders:

(a)    the Bidding Procedures Order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004, (i) approving the Bidding Procedures attached to the Bidding Procedures Order as Exhibit 1 (the "**Bidding Procedures**"), (ii) approving the notice attached to the Bidding Procedures Order as Exhibit 2 (the "**Notice of Auction and Sale Hearing**") of the deadline to bid on the Debtors' assets, (iii) setting the time, date and place of the Auction if one or more Qualified Bids (defined below) are presented in a manner that conforms to the Bidding Procedures, (iv) scheduling the Sale Hearing on August 30, 2017 at **[     ]** prevailing Eastern time to consider the entry of the Approval Order; and (v) approving the notice attached to the Bidding Procedures Order as Exhibit 3 (the "**Notice of Assumption and Assignment**") of the Debtors' intent to assume, assign, and/or transfer to the Successful Bidder or Back-Up Bidder, the contracts commitments, leases, licenses, permits, purchase orders and any other executory contracts and unexpired leases (collectively, the "**Executory Contracts and Unexpired Leases**") and the corresponding cure amounts required to be paid in connection with such assumption, assignment and/or transfer.

(b)    following the Sale Hearing, the Debtors request the entry of the Approval Order, a form of which shall be filed by the Debtors no later than 21 days prior to the Sale Hearing, pursuant to Sections 105(a) and 363(b), (f), and (m) of the Bankruptcy Code and Bankruptcy Rule 6004, (i) approving the sale of substantially all of the Debtors' assets to the party holding the highest or otherwise best bid for the assets (the "**Successful Bidder**") free and clear of all liens, claims, encumbrances, and other interests (other than certain specified assumed liabilities), (ii) authorizing the Debtors to

assume and assign to the Successful Bidder the Executory Contracts and Unexpired Leases; and (iii) granting related and ancillary relief.

16.     The Debtors further request that the sale process occur in accordance with the following timeline:[2]

| Action | Deadline (prevailing Eastern time) |
|---|---|
| Bid Procedures Objection Deadline | July 27, 2017 at 4:00 p.m. |
| Bid Procedures Hearing | July 31, 2017 at 10:00 a.m. |
| Sale Objection Deadline and Cure/Assignment Objection Deadline | August 25, 2017 at 4:00 p.m. |
| Bid Deadline | August 25, 2017 at 5:00 p.m. |
| Auction | August 29, 2017 at 4:00 p.m. |
| Sale Hearing | August 30, 2017 at [   ] |

## I.     THE PROPOSED BIDDING PROCEDURES AND AUCTION

17.     Pre-petition, the Debtors began the process to sell substantially all of their assets. They have spent since approximately March 2016 attempting to locate a buyer. Given the hundreds of contacts already made, and the interest already expressed by certain potential interested purchasers, the Debtors submit that this shortened sale process is fair and reasonable under the circumstances.

18.     Given the desire to sell the Debtors' business expeditiously and minimize administrative expenses, on the one hand, and their desire to ensure a fair and transparent opportunity for all potentially interested parties to participate in the sale process, on the other

---

[2]     The Debtors, in the exercise of their business judgment, reserve the right to change these sale-related dates in order to maximize the value of the sale.

hand, the Debtors propose that the Bidding Procedures, and related notice and other procedures

set forth herein be implemented in connection with the marketing and sale of their assets.

   19. Within three (3) days after entry of the Bidding Procedures Order, the

Debtors (or their agent) will:

   (i) cause the Notice of Auction and Sale Hearing, attached as Exhibit 2 to the Bidding Procedures Order, and a copy of the Bidding Procedures Order to be served by first class mail upon: (a) the Office of the United States Trustee; (b) counsel to the LSQ Funding Group, LC; (c) counsel to the Committee of Unsecured Creditors; (d) all parties who are known to assert a security interest, lien, or claim in any of the Assets, if any; (e) all non-Debtor parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (f) all applicable federal, state, and local taxing authorities; (g) all applicable county and state consumer protection agencies; (h) all applicable state attorneys general; (i) all other government agencies required to receive notice under the Bankruptcy Rules; (j) all known parties that have expressed interest in purchasing some or all of the Debtors' assets and (k) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Sale Notice Parties**");

   (ii) subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing once in one or more publications as the Debtors deem appropriate;

   (iii) serve the Notice of Auction and Sale Hearing on any other party appearing on the Debtors' creditor matrix (to the extent not served as a Sale Notice Party); and

   (iv) provide electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing on the Court's electronic case filing (ECF) website, http://ecf.deb.uscourts.gov.

   20. The Debtors believe the proposed Bidding Procedures, which are annexed

as Exhibit 1 to the Bidding Procedures Order, will maximize value for the benefit of the Debtor's

stakeholders.  The Bidding Procedures contemplate an auction process pursuant to which bids

will be subject to higher or otherwise better offers.  The auction process contemplated in the

Bidding Procedures takes into account competing offers from bidders to enter into a sale transaction.  The following is a summary of the significant terms of the Bidding Procedures:[3]

| Provision | Description of Provision |
|---|---|
| **Participation Requirements**<br><br>*See* Bidding Procedures at 2<br><br>*Local Rule  6004-1(c)(i)(A)(3)* | In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in entering into a Sale for some or all of the Assets (a "**Potential Bidder**") must first deliver an executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel.[4] |
| **Bid Requirements**<br><br>*See* Bidding Procedures at 2-3<br><br><br><br>*Local Rule 6004-1(c)(i)(A)(1)* | In order to participate in the bidding process and be deemed a "**Qualified Bidder**," a Potential Bidder must submit a "**Qualified Bid**" by the Bid Deadline.<br><br>To constitute a Qualified Bid, a bid must, among other things:<br><br>i.   provide to the Debtors and their counsel the most current audited and latest unaudited financial statements (collectively, the "**Financials**") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of a transaction with the Debtors, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors that demonstrates the Potential Bidder's financial ability to consummate a transaction and (y) a written commitment acceptable to the Debtors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with a sale transaction (including being bound by the terms and conditions of the Bidding Procedures); provided that if a Potential Bidder is unable to |

---

[3]   This summary is provided in accordance with Rule 6004-1(c)(i) of the Local Rules and is qualified in its entirety by reference to the provisions of the Bidding Procedures.  Each capitalized term used and not otherwise defined herein shall have the meaning assigned thereto in the Bidding Procedures.  To the extent there exists any inconsistency between this summary and the provisions of the Bidding Procedures, the provisions of the Bidding Procedures shall control.

[4]   To the extent any party executed a confidentiality agreement prior to the entry of an order approving these Bidding Procedures, such party does not need to execute another confidentiality agreement to comply with the Bidding Procedures or become a Qualified Bidder.

| | | |
|---|---|---|
| | | provide Financials, the Debtors may accept such other information sufficient to demonstrate to the Debtors' reasonable satisfaction that such Potential Bidder has the financial wherewithal to consummate a sale transaction.  Potential Bidders shall not be allowed to review or obtain the Financials of other Potential Bidders; |
| | ii. | include a cover letter identifying whether the Potential Bidder is interested in purchasing some or all of the Assets; |
| *Local Rule 6004-1(c)(i)(A)(1;)* *Local Rule 6004-1(c)(i)(B)(2)* | iii. | state that the Potential Bidder offers to consummate the sale pursuant to a proposed form of purchase agreement (the "**Purchase Agreement**") and enclose a clean signed copy of the proposed Purchase Agreement; |
| | iv. | if any bid is conditioned on the assumption and assignment of executory contracts and/or unexpired leases, then such Potential Bidder shall be required to provide evidence of its ability to provide adequate assurance of future performance of such contracts or leases along with the bid; |
| | v. | either (i) be an all-cash bid or (ii) be accompanied with verified financing; |
| *Local Rule 6004-1(c)(i)(C)(3)* | vi. | to the extent the Court has authorized the Debtors to provide bid protections to any stalking horse bidder, the total consideration offered must exceed the consideration offered by the stalking horse bidder plus the value of the stalking horse bid protections approved by the Bankruptcy Court; |
| | vii. | contain a list of the Debtors' executory contracts and unexpired leases with respect to which the Potential Bidder seeks assignment from the Debtors; |
| | viii. | confirm that the offer shall remain open and irrevocable; |
| *Local Rule 6004-1(c)(i)(B)(3)* | ix. | be accompanied with a certified or bank check or wire transfer in an amount equal to five percent (5%) of the proposed purchase price set forth in the bid as a minimum good faith deposit (the "**Minimum Deposit**"), which Minimum Deposit shall be: (a) deposited into an escrow account pursuant to an executed escrow agreement; and (b) used to fund a portion of the purchase price provided for in the bid; |

|  | x. | indicate whether the Potential Bidder intends to operate the Assets as a going concern; |
|  | xi. | not be conditioned on obtaining financing or the outcome of any due diligence by the Potential Bidder; and |
|  | xii. | fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation. |
| **Bid Deadline**<br><br>*See* Bidding Procedures at 2<br><br>*Local Rule 6004-1(c)(i)(B)(1)* | | **August 25, 2017 at 5:00 p.m.** prevailing Eastern time |
| **Bidding Increments**<br><br>*See* Bidding Procedures at 5-6<br><br>*Local Rule 6004-1(c)(i)(C)(3)* | | After the Bid Deadline, the Debtors, with the consent of LSQ shall determine which Qualified Bid or combination of Qualified Bids represent the then-highest or otherwise best bid for the Assets (the "**Starting Qualified Bid**").  Prior to the commencement of the Auction, the Debtors shall distribute copies of the Starting Qualified Bid to each Qualified Bidder.  The Auction shall commence with the Starting Qualified Bid and then proceed in minimum increments to be announced at the Auction (the "**Overbid Increment**").    The Debtors shall not consider any subsequent bid in the Auction unless any bid after the Starting Qualified Bid exceeds the previous highest bid by at least the Overbid Increment; provided, however, that in the event the Debtors select a combination of Qualified Bids to serve as the Starting Qualified Bid, the Debtors, with the consent of LSQ, reserve the right to determine an appropriate Overbid Increment. |
| **Modification of the Bidding Procedures**<br><br>*See* Bidding Procedures at 6-8<br><br>*Local Rule 6004-1(c)(i)(D)* | | All Qualified Bids, the Auction, and the Bidding Procedures are subject to modification and/or additional terms and conditions as are announced by the Debtors (with the consent of LSQ) and that are not inconsistent with the Bidding Procedures Order.<br><br>The Debtors reserve the right to modify the Bidding Procedures as they may reasonably determine to be in the best interests of their estates, with the consent of LSQ. |

| | |
|---|---|
| **Closing with Alternative Backup Bidders**<br><br>*See* Bidding Procedures at 6-7<br><br>*Local Rule 6004-1(c)(i)(E)* | At the conclusion of the Auction, the Debtors shall announce the bid or combination of bids made pursuant to the Bidding Procedures Order that represents, in the Debtors' discretion (with the consent of the DIP Lender), the highest or otherwise best offer for the Assets (the "**Successful Bid**"). Prior to the entry of the Sale Order, the Debtors shall announce the identity of the Qualified Bidder or combination of Qualified Bidders who submitted the Successful Bid at the Auction (the "**Successful Bidder**").<br><br>Following the entry of the Sale Order, if the Successful Bidder fails to consummate the transaction for any reason, the bid of the Qualified Bidder or combination of Qualified Bidders (the "**Back-Up Bidder**") that submits the next highest or otherwise best bid or combination of bids (the "**Back-Up Bid**") will be deemed the new Successful Bid, and the Debtors will be authorized, but not required, to consummate the transaction with the Back-Up Bidder without further order of the Court. |

21.     Any bidder that desires to make a bid will deliver written copies of its bid to (i) counsel for the Debtors, David M. Klauder, Esquire, Bielli & Klauder, LLC, 1204 N. King Street, Wilmington, DE 19801; (ii) counsel for the DIP Lender, Domenic E. Pacitti, Esquire, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, DE 19801; (iii) SSG Capital Advisors, LLC J. Scott Victor, Five Tower Bridge, Suite 420, West Conshohocken, PA 19428; (iv) the Debtors' CRO, Mark Iammartino, MorrisAnderson, 55 West Monroe Street #2530, Chicago, IL 60603, and (v) counsel for the Committee, Michael Busenkill, Esquire, Gellert Scali Busenkill & Brown, LLC, 1201 North Orange Street, 3rd Floor, Wilmington, DE 19801, and Mary E. Seymour, Esquire & Wojchich F. Jung, Esquire, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07069 (collectively, the "**Bid and Objection Notice Parties**"), so as to be received not later than 5:00 p.m. prevailing Eastern time on August 25, 2017.  As soon as immediately practicable after the Auction, but no later than

one (1) business day after conclusion of the Auction, the Debtors shall provide electronic notice of the results of the Auction on the Court's docket.

## II.    NOTICE OF SALE HEARING AND NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

22.    The Debtors request that the Court hold the Sale Hearing on August 30, 2017.  The Debtors have also requested that the Court establish **August 25, 2017 at 4:00 p.m.** (prevailing Eastern time), or such other date that is five (5) days prior to the Sale Hearing (other than with respect to the conduct of the Auction, with objections to the conduct of the Auction to be filed prior to the commencement of the Sale Hearing), or such later date and time as the Debtors may agree, as the deadline for objections to the sale of the Debtors' assets or the relief requested in the Motion with respect to the entry of the Approval Order (the "**Sale Objection Deadline**").  Objections to the Motion and entry of the Approval Order must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court and served upon the Bid and Objection Notice Parties by the Sale Objection Deadline.

23.    In order to facilitate the sale of the Debtors' assets and the assumption, assignment, and/or transfer of the Executory Contracts and Unexpired Leases to the Successful Bidder contemplated thereunder, within three (3) business days of entry of the Bidding Procedures Order, the Debtors will serve copies of the Bidding Procedures Order and the Notice of Assumption and Assignment substantially in the form attached to the Bidding Procedures Order as Exhibit 3 upon all non-Debtor parties to the Executory Contracts and Unexpired Leases. If the Debtors or Successful Bidder identifies additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Successful Bidder or that were not set forth in the original Notice of Assumption and Assignment, the Debtors will promptly send a

supplemental notice (a "**Supplemental Notice of Assumption and Assignment**") to the applicable counterparties to such additional executory contracts and unexpired leases.[5]

24.     In the Notice of Assumption and Assignment, the Debtors will identify the calculation of the cure amounts that the Debtors believe must be paid to cure all defaults under the Executory Contracts and Unexpired Leases (the "**Cure Amounts**").  If no amount is listed on the Notice of Assumption and Assignment with respect to an Executory Contract or Unexpired Lease, the Debtors believe that there is no Cure Amount applicable to such Executory Contract or Unexpired Lease.

25.     The Debtors request that unless the non-Debtor party to an Executory Contract or Unexpired Lease files an objection (the "**Cure Amount/Assignment Objection**") to (a) its scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease by the later of (i) **August 25, 2017 at 5:00 p.m.** (prevailing Eastern time) (or such other date that is five (5) days prior to the Sale Hearing, or such later date and time as the Debtors may agree), or (ii) seven (7) days after service of the relevant Supplemental Notice of Assumption and Assignment (the "**Cure/Assignment Objection Deadline**") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline by the Bid and Objection Notice Parties, then such non-Debtor party shall (i) be forever barred from objecting to the Cure

---

[5]     The inclusion of any contract or unexpired lease of nonresidential real property on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment shall not be an admission by the Debtors or their estates that any such contract or unexpired lease of nonresidential real property so included is an executory contract.  Nor shall the inclusion of any contract or unexpired lease of nonresidential real property on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment constitute an admission of liability by the Debtors or their estates or effectuate the assumption or assignment of such contract or lease of nonresidential real property, absent entry of an order of the Court approving the assumption and/or assignment of such contract or lease of nonresidential real property in conjunction or as part of any Approval Order.

Amount and from asserting any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount and (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease to the Successful Bidder or Back-Up Bidder and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder, or Back-Up Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease.  Notwithstanding the foregoing, as provided below, each non-Debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract and Unexpired Lease, based solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

26.     Any objection challenging a Cure Amount must set forth the cure amount being claimed by the objecting party (the "**Claimed Cure Amount**") and include appropriate documentation in support thereof.  Upon receipt of a Cure Amount/Assignment Objection, the Debtors request that it be granted the authority, but not direction, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court.  In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection no later than three (3) business days prior to the Sale Hearing, the Debtors will request that the Court resolve such Cure Amount/Assignment Objection at (a) the Sale Hearing or (b) at such other date as the Court may designate, provided that if the

subject Executory Contract or Unexpired Lease is assumed and assigned prior to resolution of any Cure Objection, the Claimed Cure Amount asserted by the objecting party (or such lower amount as may be fixed by the Court) shall be deposited by Successful Bidder to be held in a segregated account maintained by the Debtors or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

27.    The Debtors, the Successful Bidder, or the Back-Up Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Executory Contracts and Unexpired Leases to be assumed and assigned under the Purchase Agreement no later than one (1) business day prior to the Sale Hearing, or, if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) business days following the Court's determination.  The non-Debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

28.    Within one (1) business day after the conclusion of the Auction, the Debtors will serve a notice identifying the Successful Bidder and Back-Up Bidder (the "**Notice**") to the non-Debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid and Back-Up Bid.  The Debtors propose that the non-Debtor parties to the Executory Contracts and Unexpired Leases have until 4:00 p.m. prevailing Eastern time on the date that is five (5) business days after Notice (the "**Adequate Assurance Objection Deadline**") to object to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.  The

Successful Bidder or Back-Up Bidder, as the case may be, shall work with any objecting parties to resolve any disputes and/or concerns regarding the Successful Bidder or Back-Up Bidder's ability to provide adequate assurance of future performance.  If, however, any disputes cannot be resolved within three (3) business days after the Adequate Assurance Objection Deadline, either party may seek a determination from this Court solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

29.    The Debtors may, at their sole discretion, provide a limited expense reimbursement to a Bidder, so long as (a) the Bidder is not the Successful Bidder; (b) the Bidder is not the Stalking Horse; and (c) all documentation for expenses is submitted in full to the Debtors' Chief Restructuring Officer within seven (7) days of the Auction.

<u>**Basis for Relief Requested**</u>

I.    **AUTHORIZING BIDDING PROCEDURES AND AUCTION**

30.    Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

31.    Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (holding that the following non-exclusive list of factors may be considered by a court in determining whether there is a sound business purpose for an asset sale:

17

"the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value"). *See also Myers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)) (noting that the Court defers to the trustee's judgment so long as there is a legitimate business justification); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").   Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1).   Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. S*ee Pitt v. First Wellington Canyon Assocs.* (*In re First Wellington Canyon Assocs.*), No. 89 C 593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

32.     The "sound business reason" test requires a trustee or debtor in possession to establish four elements:  (1) that a sound business purpose justifies the sale of assets outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to

interested persons; (3) that the trustee or the debtor in possession has obtained a fair and reasonable price; and (4) that the trustee or debtor in possession acted in good faith. *Abbotts Dairies*, 788 F.2d 143; *Del. & Hudson Ry.*, 124 B.R. at 176; *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *see also Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Lionel*, 722 F.2d at 1071.

33.     In this case, as set forth more fully herein, the Debtors submit that the decision to proceed with the marketing in accordance with the Bidding Procedures and entry into a sale transaction related thereto is based upon sound business judgment and should be approved. Ample business justification exists to support the decision to sell the Debtors' assets pursuant to the Bidding Procedures, thereby satisfying the first prong of *Abbotts Dairies*.  The sale of the Debtors' assets presents the best opportunity to maximize value for their estates, and the process for marketing and selling the assets described in the Bidding Procedures presents the best method by which the Debtors can promote a competitive sale process as well as provide interested parties with accurate and reasonable notice of the sale.  The Debtors have already engaged in protracted attempts to sell their assets; the shortened time frame for this proposed sale process is therefore justified under the circumstances. The Bidding Procedures allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtors will receive the best possible consideration for their assets.

34.     In addition, the notice described herein and in the Bidding Procedures Order is designed to provide adequate notice to all potentially interested parties. Accordingly, the proposed sale of the Debtors' assets satisfies the second prong of the *Abbotts Dairies* standard.

35.     The Bidding Procedures are also designed to maximize the value received for the Debtors' assets.  The Debtors respectfully submit that the relief sought by this Motion is reasonably calculated to maximize value for the benefit of the Debtors and all stakeholders.  The process proposed by the Debtors allows for a timely Auction while providing bidders ample time and information to submit a bid.  The Bidding Procedures are designed to ensure that the Debtors' assets will be sold for the highest or otherwise best possible price.  The Debtors will (with leave of Court) permit prospective purchasers to bid on their assets, thereby subjecting the proposed sale to a market check through the solicitation of competing bids in a court-supervised auction process.  Accordingly, the Debtors and all parties in interest can be assured that the consideration received for their assets will be fair and reasonable, and therefore the third prong of the *Abbotts Dairies* standard is satisfied.  As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied here.

**A.     The Bidding Procedures Should be Approved**

36.     The Debtors believe that soliciting bids and conducting the Auction is critical to the integrity of their search process for a purchaser of the assets, and is the best way to maximize the value of the Debtors' estates.  Based on the Auction results, the Debtors will consummate the Purchase Agreement with the Successful Bidder.  Accordingly, the Debtors respectfully request that the Court approve the Bidding Procedures, as set forth in Exhibit 1 to the Bidding Procedures Order.

37.     If a Stalking Horse Bidder is designated, the use of a Stalking Horse APA, upon which the initial bids, as well as bids at the Auction will be based, will enable the Debtors and other parties-in-interest to easily compare and contrast any differing terms of the Bids made by the Qualified Bidders at the Auction.

38.    The Debtors submit, and will demonstrate at the Sale Hearing, that any Purchase Agreement entered into with the Successful Bidder will be the result of good faith arms'-length negotiations and the good faith extension of credit by the Successful Bidder as well as the other financial accommodations, as set forth in the Purchase Agreement, constitute the extension of credit in good faith under section 364(e) of the Bankruptcy Code.  As such, the reversal or modification on appeal of the Court's authorization to consummate the transactions contemplated by the Purchase Agreement, and the security interest granted thereunder, should not affect the validity of such transactions unless such authorization has been stayed pending appeal.

39.    The Debtors believe that the Bidding Procedures are fair and reasonable, are designed to maximize value, and are not likely to dissuade any serious potential bidder from bidding.

**B.    The Form and Manner of Notices Should be Approved**

40.    Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify their creditors of the Auction and the sale, including a disclosure of the date, time, and place of the Auction, the terms and conditions of the sale, the date, time, and place of the Sale Hearing, and the deadline for filing any objections to the relief requested herein.  Within three (3) days of entry of the Bidding Procedures Order, the Debtors will serve the Notice of Auction and Sale Hearing by first class mail upon the Notice Parties.

41.    The Debtors submit that the form of Notice of Auction and Sale Hearing, substantially in the form attached as <u>Exhibit 2</u> to the Bidding Procedures Order, is reasonably calculated to provide timely and adequate notice of the proposed Sale, the Bidding Procedures, the Auction, and the Sale Hearing.  This will provide notice to the Debtors' creditors and all other parties-in-interest that are entitled to notice, as well as those parties that have expressed a

21

bona fide interest in acquiring the Debtors' assets.  Accordingly, the Debtors request that the Court approve the notice procedures set forth in this Motion, including the form and manner of service of the Notice of Auction and Sale Hearing, and that no other or further notice of the Sale, the Bidding Procedures or the Auction is required.

## II.   APPROVAL OF THE SALE IS WARRANTED UNDER SECTION 363 OF THE BANKRUPTCY CODE

42.     The Debtors, exercising their business judgment and in consultation with their advisors and key constituents, have determined that it is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest to conduct a sale of their assets.  Based on applicable precedent, the Court should authorize the Debtors to do so as set forth herein to stem the losses resulting from continued operations of the assets and to enable the estates to recover as much as possible the liquidation of the assets as a going concern.

### A.   The Proposed Schedule for the Sale Hearing and Applicable Deadlines is Reasonable and Justified

43.     At present, the Debtors possess significant assets, but most of those assets (primarily in the form of fulfillment procurement contracts with its creditors) are illiquid. However, the Debtors also have approximately $7.1 million in general unsecured claims. Thus, the sooner the Debtors can consummate a sale of the assets, the sooner the Debtors can use liquid cash assets to satisfy creditors' claims.  Moreover, delays in the sale process described herein may cause the Debtors to be unable to use their cash to operate going forward, which would result in immediate devaluation of their assets.

44.     The Debtors believe that it is crucial that they consummate the Sale on their proposed timeline to maximize value for the Debtors' estates while minimizing administrative expenses. Though approximately a month would elapse between the hearing on this Motion and the hearing on a Sale, the Debtors have already spent over a year pre-petition

marketing substantially all assets, and have identified some likely Bidders. Thus, the Debtors respectfully request that the Court hold the Sale Hearing on August 30, 2017. The Debtors propose to consummate the Sale immediately following the Sale Hearing and thereby stem the losses resulting from the continued operation of the assets. The sale process described herein – albeit slightly expedited – provides the best chance for a recovery to the Debtors' creditors. Thus, time is of the essence to preserve and maximize the value of the Debtors' assets.

45.    In evaluating proposed expedited sales under section 363 of the Bankruptcy Code, courts have considered debtors' dwindling cash positions, whether an expedited sale is necessary to preserve value, and the number of likely potential buyers. *See In re Tempo Tech. Corp.*, 202 B.R. 363, 370 (D. Del. 1996) (upholding a bankruptcy court's authorization of a debtor's sale of assets on an expedited basis where "the expedited sale was necessary to preserve the value of the Debtor's assets," noting the debtor's dwindling liquidity and that there was a single buyer willing to negotiate purchase terms). *See also In re Titusville Country Club*, 128 B.R. 396, 397 (Bankr. W.D. Pa. 1991) (allowing a sale of country club assets on an expedited basis where timing considerations were based on the seasonal nature of the debtor's business).

46.    The Debtors and their advisors have analyzed exhaustively the Debtors' business and various strategic alternatives and determined that an immediate liquidation of the Debtors' assets provides most likely path to maximize recoveries for the Debtors' estates, their creditors and other parties-in-interest in the wind-down of the Debtors' business. Moreover, a sale of the assets on the timeline set forth herein will maximize the possibility of a recovery for the Debtors' creditors while minimize the administrative expenses of the estates by ensuring an appropriate post-petition marketing process to reengage prior interested parties (and attempt to

identify new interested parties).  If the Debtors are required to delay consummation of a sale of the assets, the estates would suffer significant detriment from the resulting delay, added post-petition expenses, and would likely be forced to convert these cases to chapter 7 – eliminating any possibility for a value maximizing going-concern sale of the assets.

**B.      Sale of Assets Should Be Free and Clear of Liens, Claims and Encumbrances**

47.      The Debtors request authority to sell the assets free and clear of all liens, claims, encumbrances, and other interests in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, and other interests on or in the assets attaching to the consideration received in the same order or priority and with the same force, validity and effect as such liens, claims, encumbrances, and other interests had with respect to such assets prior to the sale.

48.      Section 363(f) of the Bankruptcy Code allows a debtor to sell property "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is met:

(a)      applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(b)      the party asserting the lien, claim or interest consents to the sale;

(c)      the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property;

(d)      the interest is the subject of a bona fide dispute; or

(e)      such entity could be compelled to accept a money satisfaction of such claim.

11 U.S.C. § 363(f); *see also In re Elliott*, 94 B.R. 343, 345 (E.D. Pa 1988) (noting that section 363(f) is written in the disjunctive, thereby allowing sales "free and clear" if any one of the subsections is met).

24

49.     The Debtors do not believe any prepetition creditor has a superior secured position to LSQ in the assets.  The Debtors believe that LSQ will consent to the sale.  In addition, the Debtors are aware that certain other entities filed financing statements asserting purported secured interests in the Debtors' assets.  The Debtors will serve this Motion, and other sale-related documents, on these entities.  Furthermore, to the extent any entities do have a valid interest in the assets that have not already consented to the sale, such entity could be compelled to accept a money satisfaction of such interest. Specifically, the Debtors propose that to the extent that any liens, claims, encumbrances, and other interests could be asserted against the assets, those could attach to any proceeds realized from the sale of such assets, in the same order of priority and subject to the rights, claims, defenses and objections, if any, of all parties with respect thereto.  As a result, the Debtors believe that they will satisfy section 363(f)(2) of the Bankruptcy Code.

**C.     The Successful Bidder Should be Granted the Protections of Section 363(m) of the Bankruptcy Code**

50.     As will be set forth in further detail at the Sale Hearing, the Debtors also maintain that the Successful Bidder arising from the Auction, is or would be entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

51.     Specifically, section 363(m) of the Bankruptcy Code provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

52.     While the Bankruptcy Code does not define "good faith," the Third Circuit in *Abbotts Dairies* held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders

788 F.2d at 147 (citations omitted); *see generally Marin v. Coated Sales, Inc.* (*In re Coated Sales, Inc.*), No. 89-3704 (KMW), 1990 WL 212899, at * 2 (S.D.N.Y. Dec. 13, 1990) (holding that a party, to show lack of good faith, must demonstrate "fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (*quoting In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

53.     In addition, as will be set forth in further detail at the Sale Hearing, the Debtors will negotiate with the Successful Bidder without collusion, in good faith, and from arm's-length bargaining positions, with give and take on both sides.  Further, neither the Debtors nor the Successful Bidder will engage in any conduct that would cause or permit the Purchase Agreement to be avoided.  Under the circumstances, this Court will have a sufficient factual and legal basis to find that the Successful Bidder is entitled to all of the protections of section 363(m) of the Bankruptcy Code.

**D.      The Court Should Approve Procedures Relating to the Assumption and Assignment of Executory Contracts and Unexpired Leases**

54.     The Debtors respectfully submit that the Court should approve procedures relating to the assumption and assignment of Executory Contracts and Unexpired Leases.  In

assuming and assigning the Executory Contracts and Unexpired Leases, the Debtors intend to comply with the provisions of Bankruptcy Code Section 365(f)(2).  Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The [debtor] may assign an executory contract or unexpired lease of the debtor only if -
>
> (A) the [debtor] assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

55.     Under Bankruptcy Code section 365(a), a debtor, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.   11 U.S.C. § 365(a).   Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor.  This subsection provides:

> (b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

56.     Section 365(b) of the Bankruptcy Code requires the debtor to cure any defaults under the contract or provide adequate assurance that it will promptly cure such defaults.

If there has been a default, the debtor must also provide adequate assurance of future performance under the contract.

57.    With respect to adequate assurance of future performance, the meaning of adequate assurance of future performance depends on the facts and circumstances of each case, but should be given practical, pragmatic construction. *See In re Dura Auto. Sys.*, No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764, at *274 (U.S. Bankr. D. Del. Aug. 15, 2007) ("[t]he meaning of adequate assurance of future performance depends on the facts and circumstances of each case, but should be given practical, pragmatic construction") (internal quotations omitted).

58.    Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *Dura Auto. Sys.*, No. 06-11202 (KJC), 2007 Bankr. LEXIS at *274; *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance where a debtor's proposed assignee's "financial resources" and experience as a successful restaurateur "indicate "that the Landlord is adequately assured that the rent will be paid").

59.    The Debtors will demonstrate facts at the Sale Hearing to show the financial wherewithal and the Successful Bidder's willingness and ability to perform under the Executory Contracts and Unexpired Leases.  The Sale Hearing will therefore provide the Court and the other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate assurance of future performance under the Executory Contracts and Unexpired Leases, as required under Bankruptcy Code section 365(b)(1)(C).  The Court should therefore authorize the Debtors to assume and assign the Executory Contracts and Unexpired Leases as set forth herein.

60.     The Debtors also request that the Court include in the Approval Order provisions barring non-Debtor parties to Executory Contracts and Unexpired Leases assumed and assigned under such order, from: (i) asserting any default, loss, or liability against the assignee of such contract based on any event or circumstance arising prior to the date of assignment; or (ii) objecting to the assumption and assignment of its Executory Contract or Unexpired Lease, unless the non-Debtor party timely objects to this Motion.

61.     The Debtors believe that the foregoing procedures provide counterparties to affected contracts notice and a reasonable opportunity to protect their individual interests and should be approved.

## III.    FURTHER RELIEF

62.     The Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above and in the First Day Declaration, time is of the essence and it is imperative that the Debtors be permitted to consummate a sale on the timeline proposed.  In order to maximize the value of the assets and minimize the estates' unnecessary administrative expenses, the Debtors believe a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), to the extent that they apply, is in the best interest of the Debtors' estates and stakeholders.

## Notice

63.     Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) counsel for the Committee; (c) counsel to LSQ; (d) the Office of the United States Trustee; (d) any party that has previously asserted a secured interest in the Debtors' assets; and (f) any party

that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the Bidding Procedures Order and Approval Order, granting the relief requested in this Motion and such other and further relief as may be just and proper.

**BIELLI & KLAUDER, LLC**

Dated: July 20, 2017
Wilmington, Delaware

/s/ David M. Klauder
David M. Klauder (No. 5769)
Nella M. Bloom (No. 5430)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com
Email: nbloom@bk-legal.com

*Proposed Counsel to the Debtors*
*and Debtors-In-Possession*

30